IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>ADVANTA CORP., *et al.,*<br><br>               Debtors. | Chapter 11<br><br>Case Nos. 09-13931 (KJC), *et seq.*<br>(jointly administered) |
| ADVANTA BANK CORP.,<br><br>               Plaintiff,<br><br>v.<br><br>ADVANTA CORP.,<br><br>               Defendant. | Adversary Proc. No. 10-50795-KJC |

**OPENING BRIEF IN SUPPORT OF
MOTION OF THE FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER OF ADVANTA BANK CORP., SEEKING A
DECLARATION THAT THE AUTOMATIC STAY DOES NOT APPLY OR, IN THE
<u>ALTERNATIVE, AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 2

BACKGROUND ..................................................................................................................... 4

I.      APPOINTMENT OF THE FDIC AS RECEIVER ........................................................... 4

II.     THE FDIC-R'S OBLIGATIONS AND RIGHTS AS A FIDUCIARY UNDER
THE INTERNAL REVENUE CODE AND REGULATIONS ........................................ 7

III.    THE FILING OF CONSOLIDATED TAX RETURNS PRIOR TO ADVANTA'S
BANKRUPTCY ............................................................................................................. 9

IV.   THE 2009 CONSOLIDATED TAX RETURN FILED BY ADVANTA ......................... 9

JURISDICTION ..................................................................................................................... 11

RELIEF REQUESTED ........................................................................................................... 11

BASIS FOR RELIEF REQUESTED ...................................................................................... 12

I.      THE AUTOMATIC STAY SHOULD NOT APPLY TO THE FDIC-R'S
EXERCISE OF THE TAX RIGHTS .............................................................................. 12

II.     TO THE EXTENT THAT IT IS DEEMED TO APPLY AND MAY BE
REQUIRED, CAUSE EXISTS TO LIFT THE STAY TO ALLOW THE FDIC-R
TO EXERCISE ITS TAX RIGHTS .............................................................................. 13

CONCLUSION ....................................................................................................................... 18

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*281-300 Joint Venture v. Onion*,
    938 F.2d 35 (5th Cir. 1991) ...................................................................7

*BSD Bancorp, Inc. v. FDIC*,
    No. 93-12207-A11 ...................................................................18

*Capital Bancshares v. FDIC*,
    957 F.2d 203 (5th Cir. 1992) ...................................................................17

*Citizens Bank of Maryland v. Strumpf*,
    516 U.S. 16 (1995)...................................................................12

*FDIC v. Mercer Bancorp, Inc.*,
    No. 89-0849, 1990 WL 515173 (W.D. Mo. 1990) ...............................17

*Gross v. Bell Sav. Bank PA SA*,
    974 F.2d 403 (3d Cir. 1992)...................................................................6

*In re Bob Richards Chrysler-Plymouth Corp.*,
    473 F.2d 262 (9th Cir. 1973) ...................................................................18

*In re Colonial Realty Co.*,
    980 F.2d 125 (2d Cir. 1992)...................................................................7

*In re Florida Park Banks, Inc.*,
    110 B.R. 986 (Bankr. M.D. Fla. 1990) ...................................................18

*In re Landmark Land Co.*,
    973 F.2d 283 (4th Cir. 1992) ...................................................................5, 6

*In re Revco D.S., Inc.*,
    111 B.R. 631 (Bankr. N.D. Ohio 1990) ...................................................17

*In re The Sco Group, Inc.*,
    395 B.R. 852 (Bankr. D. Del. 2007) ...................................................13

*In re Wilson*,
    116 F.3d 87 (3d Cir. 1997)...................................................................13

*In re Rexene Prods. Co.*,
    141 B.R. 574 (Bankr. D. Del. 1992) ...................................................14, 17

# TABLE OF AUTHORITIES

(continued)

*Jump v. Manchester Life & Cas. Mgmt. Corp.*,
    438 F. Supp. 185 (E.D. Mo. 1997), *aff'd*, 579 F.2d 449 (8th Cir. 1978)................................18

*Peterson v. Cundy (In re Peterson)*,
    116 B.R. 247 (D. Colo. 1990)................................................................................................17

*Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*,
    947 F.2d 49 (3d Cir. 1991)....................................................................................................5

*Rosa v. Resolution Trust Corp.*,
    938 F.2d 383 (3d Cir. 1991)..................................................................................................6

*Sunshine Dev. v. FDIC*,
    33 F.3d 106 (1st Cir. 1994) ..................................................................................................7

*Telematics Int'l, Inc. v. NEMLC Leasing Corp.*,
    967 F.2d 703 (1st Cir. 1992)................................................................................................6

*United States v. Rodrigues*,
    159 F.3d 439 (9th Cir. 1998) ..............................................................................................16

## FEDERAL STATUTES AND REGULATIONS

26 C.F.R. § 1.1502-77...............................................................................................................9

26 C.F.R. § 1.6012-3(b)(4) ...............................................................................................7, 13

26 C.F.R. § 301.6402-7.......................................................................................1, 2, 3, 7, 8, 12

11 U.S.C. § 362..........................................................................................................2, 12, 13

12 U.S.C. § 1821.....................................................................................................5, 6, 7, 13

26 U.S.C. § 172(b)(1) ...............................................................................................................9

26 U.S.C. § 1501......................................................................................................................9

26 U.S.C. § 6402......................................................................................................................8

28 U.S.C. § 157......................................................................................................................11

**TABLE OF AUTHORITIES**
(continued)

28 U.S.C. § 1334.............................................................................................................11

28 U.S.C. § 1408.............................................................................................................11

28 U.S.C. § 1409.............................................................................................................11

Pub. L. No. 101-73, 103 Stat. 183 .................................................................................5

The Federal Deposit Insurance Corporation (the "FDIC"), as Receiver ("FDIC-R") of Advanta Bank Corp. ("ABC"), has filed a Motion Seeking a Declaration That the Automatic Stay Does Not Apply or, In the Alternative, an Order Granting Relief From the Automatic Stay (the "Motion"),[1] in which this brief was incorporated by reference, so that the FDIC-R may satisfy certain of its obligations and exercise certain of its rights pursuant to Sections 6012(b)(3) and 6402(k) of Title 26 of the United States Code (the "Internal Revenue Code" or "IRC") and 26 C.F.R. § 301.6402-7 ("Treas. Reg. § 301.6402-7"). For the reasons set forth herein, the Motion should be granted.

By these provisions, as described more fully below, the FDIC-R is entitled to file a claim for a refund and file a loss year return for the 2008 and 2009 tax years as a fiduciary of ABC, and any amendments to prior years' returns as may be permitted under law, and to take such other action as may be necessary to protect and preserve the claims of the receivership estate (the "Receivership") to tax refunds (collectively, the "Tax Rights"). To the extent the automatic stay pursuant to Section 362(d) of Title 11 of the Bankruptcy Code (the "Bankruptcy Code") applies – and the FDIC-R seeks a declaration that it does not – the FDIC-R seeks relief from the automatic stay to file consolidated returns with respect to the 2008 and 2009 taxable years of the

---

[1] The submission of the Motion or this brief shall not in any way constitute a submission by the FDIC-R to the jurisdiction or authority of the Bankruptcy Court for the resolution of any regulatory matter involving the FDIC-R. Nor is the Motion or this brief an admission that this Court is the appropriate forum for disputes involving the FDIC-R. The filing of the Motion or this brief shall not constitute a waiver or consent by the FDIC-R of any: (a) right to sovereign immunity, where the FDIC-R is acting in its capacity as Receiver; (b) right to have any and all final orders in any and all non-core matters entered only after de novo review by a United States District Court Judge; (c) right to trial by jury in any proceeding as to any and all matters so triable therein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related thereto, whether or not such jury trial right is pursuant to statute or the United States Constitution; (d) right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; or (e) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which the FDIC-R is entitled under any agreements or at law or in equity or under the United States Constitution. All of the foregoing rights are expressly reserved and preserved, without exception, and without the intention or purpose of conceding jurisdiction in any way by this filing or by any other participation in this matter or in this case. The FDIC-R expressly reserves all rights at law and equity to assert the preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under Title 12, as applicable, with respect to the FDIC-R.

affiliated group of which ABC is a consolidated subsidiary, make certain elections with respect to the carryback of consolidated net operating losses ("NOLs") attributable to ABC and its wholly-owned subsidiary Advanta Banking Receivable Corporation ("ABRC") in those taxable years, and claim a refund of taxes with respect to those taxable years (collectively the "FDIC-R Returns").[2]

In support thereof, the FDIC-R asserts as follows:

## PRELIMINARY STATEMENT

1. On Sunday, March 14, 2010, ABC's parent corporation, Advanta Corp. ("Advanta"), e-filed a 2009 consolidated tax return for Advanta and an affiliated group of corporations (the "Consolidated Group") in conformance with a Tax Sharing Agreement ("TSA") entered by the Consolidated Group. Advanta filed the 2009 consolidated tax return (the "2009 Consolidated Return") without any advanced notice to its wholly-owned subsidiary ABC. In its filing, Advanta elected to abandon an estimated $54 million tax refund by failing to make a five-year NOL carryback election (the "Five-Year NOL Carryback"). Had Advanta made that election, ABC would have been entitled to most, if not all, of the $54 million refund. Moreover, had ABC filed a separate tax return, it would have received that refund and an additional $116 million from Advanta as described below.

2. By filing the 2009 Consolidated Return without electing the Five-Year NOL Carryback, Advanta at minimum violated its fiduciary duties under the TSA and breached the TSA itself. The TSA provides that each member will not pay more or suffer a greater loss than

---

[2] A fiduciary's claim for refund or application for tentative carryback adjustment on behalf of an insolvent financial institution must be based on the items of income and loss attributable to all members of an insolvent financial institution subgroup. Under Treas. Reg. § 301.6402-7(h)(2), an insolvent financial institution subgroup includes members of the loss year group that bear the same relationship to the institution as the members of a group bear to their common parent under Section 1504(a)(1) of the Internal Revenue Code and in the case of the FDIC-R and ABC, this would include ABRC. Therefore, any reference to ABC will, where appropriate include, ABRC.

the other members, that no member will pay an amount in excess of what it would have on a separate return, and that where a member is injured, that member will be compensated for its loss. By waiving the Five-Year NOL Carryback, Advanta injured ABC and has failed to make ABC whole, thus breaching its fiduciary and contractual obligations to ABC under the TSA.

3.      On March 19, 2010, the Utah Department of Financial Institutions found that ABC was insolvent and closed the bank. The FDIC-R was appointed as Receiver of ABC.[3]

4.      By statute, the FDIC-R is charged with the preservation and collection of all assets of a failed depository institution for the benefit of depositors and taxpayers. The law recognizes that these statutory duties entail seeking tax refunds that may be due to failed depository institutions, even where, as here, consolidated tax returns have previously been filed by a parent holding company, as agent of an affiliated group. Under Section 6402(k) of the IRC and Treas. Reg. § 301.6402-7, the FDIC-R, as a "fiduciary," is granted the right to serve as an alternate agent for a consolidated group, with the corresponding right to file a return separately from the parent holding company and to assert a separate basis for a refund – here, the carryback of ABC's NOLs.

5.      Through the Motion, the FDIC-R, in its role as receiver of ABC, seeks a declaration that the automatic stay does not apply or, alternatively, relief from the automatic stay

---

[3] Prior to the FDIC's seizure of ABC, ABC filed an adversary proceeding and two motions with this Court concerning Advanta's improper waiver of the Five-Year NOL Carryback. In the first motion (the "Tax Motion"), filed on March 12, 2010, ABC sought to compel Advanta (1) to file an extension of time to file the Consolidated Group's 2009 consolidated NOLs, or (2) elect the Five-Year NOL Carryback with respect to the Consolidated Group's 2009 consolidated NOLs. In the second motion (the "Injunction Motion"), filed on March 19, 2010, ABC sought (1) a declaratory judgment that the waiver of the Five-Year NOL Carryback for the year 2009 was null and void because it was made outside of the ordinary course of business in violation of section 363 of the Bankruptcy Code, (2) a mandatory injunction to compel Advanta to request an extension of the tax deadline, and (3) a mandatory injunction to compel Advanta to elect the Five-Year NOL Carryback for the year 2009. Since the FDIC assumed control over ABC on March 19, 2010, the FDIC has withdrawn the Tax Motion as moot given Advanta's filing of the 2009 Consolidated Return on March 14, 2010. The FDIC-R is continuing to prosecute the Injunction Motion, which will be heard together with this Motion.

so that the FDIC-R may file (i) an FDIC-R Return for the 2009 taxable year that elects the Five-Year NOL Carryback along with a claim for a refund of taxes with respect to the 2009 NOLs attributable to ABC and (ii) an FDIC-R Return for the 2008 taxable year that does not elect the Five-Year NOL Carryback with respect to the 2008 NOLs attributable to ABC along with a claim for a refund of taxes pursuant to the general two-year carryback rule with respect to the 2008 NOLs attributable to ABC.

## BACKGROUND

### I.    APPOINTMENT OF THE FDIC AS RECEIVER

6.     The background of this dispute has already been set forth in the Injunction Motion and the accompanying Declaration of Kenneth Michael Goldman ("Goldman Decl."), which the FDIC-R incorporates herein by reference.  The FDIC-R also submits herewith the Declaration of Richard Thompson (the "Thompson Decl.," attached hereto as **Exhibit 1**) to provide additional background.

7.     On March 19, 2010, ABC was closed by the Utah Department of Financial Institutions and the FDIC was appointed as Receiver of ABC.  (Thompson Decl. ¶ 2.)  Under the laws of the United States, the FDIC-R, as Receiver, is charged with the duty of winding up the affairs of ABC.

8.     ABC is a Utah-chartered industrial bank with $2.3 billion in total assets, as of September 30, 2009.  (Thompson Decl. ¶ 4.)  Prior to its closure, ABC was one of the largest issuers of business purposes credit cards to small businesses and business professionals in the United States.  ABC stock was Advanta's primary asset.  *Id.*

9.     The FDIC is a corporation organized and existing pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq*., with its principal place of business located in Washington, D.C.  The FDIC is an independent agency created by the Congress of the United

States that maintains the stability and public confidence in the nation's financial system by insuring deposits, examining and supervising financial institutions, and managing receiverships.

10. Pursuant to 12 U.S.C. § 1821(d)(2)(A)(i), the FDIC-R succeeds by operation of law to all rights, titles, powers, and privileges, including legal claims, of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution. *See* 12 U.S.C. § 1821(d)(2)(A)(i). Further, pursuant to 12 U.S.C. § 1821(g)(1), and notwithstanding any other provision of federal law, the FDIC-R is subrogated to all rights of any payment to any depositors upon either payment to depositors or the making of provisions for payment to the depositors of ABC. *See* 12 U.S.C. § 1821(g)(1). The FDIC-R acts to protect insured depositors and creditors of ABC.

11. The powers and responsibilities of the FDIC in its various capacities are set forth in Title 12 of the United States Code ("Title 12") and, in particular, the provisions of Title 12 enacted by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"). *See* Pub. L. No. 101-73, 103 Stat. 183 (1989) (codified in scattered sections of Title 12). Congress enacted FIRREA to alleviate the dire circumstances facing the savings and loan industry during the savings and loan crisis, ultimately seeking to restore public confidence in the banking system. *See Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 62 (3d Cir. 1991). To realize this goal, Congress established in FIRREA a comprehensive statutory scheme under which the FDIC-R is granted broad powers to manage, reorganize, and collect assets of a failed depository institution for the benefit of depositors (and taxpayers). *See In re Landmark Land Co.*, 973 F.2d 283, 289 (4th Cir. 1992).

12. Among the powers of the FDIC-R in this regard include the power to:

(i)     take over the assets of and operate the insured depository institution with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution;

(ii)    collect all obligations and money due the institution;

(iii)   perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and

(iv)    preserve and conserve the assets and property of such institution.

12 U.S.C. § 1821(d)(2)(B).  Additionally, the FDIC-R may exercise "such incidental powers as shall be necessary" to carry out the powers specifically enumerated in Title 12.  12 U.S.C. § 1821(d)(2)(J)(i).

13.     Consistent with this broad legislative mandate, FIRREA precludes any court from taking any action to "restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver."  12 U.S.C. § 1821(j).  Indeed, the comprehensive and exclusive scheme of FIRREA indicates Congress' intent to allow the FDIC-R "full rein" to exercise its statutory authority to protect depositors and creditors without interference from bankruptcy courts or district courts.  *Landmark*, 973 F.2d at 290.

14.     The broad authority accorded to the FDIC to protect depositors and creditors of an insolvent financial institution has been recognized in a number of cases in which courts have held that they lacked jurisdiction to enjoin or otherwise interfere with actions taken by the FDIC or Resolution Trust Corporation ("RTC") when acting within the scope of their authority as receiver or conservator.  *See, e.g., Gross v. Bell Sav. Bank PA SA*, 974 F.2d 403, 408 (3d Cir. 1992) (holding that district court lacked the ability to enjoin activity by the RTC where the RTC is colorably acting within its enumerated powers); *Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703 (lst Cir. 1992) (holding that federal court lacks jurisdiction to enjoin FDIC

from foreclosing on a certificate of deposit to which it acquired a secured interest as receiver);

*Rosa v. Resolution Trust Corp.*, 938 F.2d 383 (3d Cir. 1991) (holding that non-monetary

provisions of injunction compelling payment of pension plan contributions impermissibly

restrained the legitimate exercise of RTC's statutory powers, even though RTC's actions in

terminating pension plan were in contravention of ERISA); *281-300 Joint Venture v. Onion*, 938

F.2d 35 (5th Cir. 1991) (holding that district court lacked ability to enjoin the RTC, acting as

conservator, from foreclosing on property that served as security for the failed institution's

loan).[4]

## II.  THE FDIC-R'S OBLIGATIONS AND RIGHTS AS A FIDUCIARY UNDER THE INTERNAL REVENUE CODE AND REGULATIONS

15. As the receiver of ABC, the FDIC-R is obligated to file tax returns on behalf of

ABC.  Section 6012(b)(3) of the Internal Revenue Code provides:

> In a case where a receiver, trustee in a case under title 11 of the United
> States Code, or assignee, by order of a court of competent jurisdiction, by
> operation of law or otherwise, has possession of or holds title to all or
> substantially all the property or business of a corporation, whether or not
> such property or business is being operated, such receiver, trustee, or
> assignee shall make the return of income for such corporation in the same
> manner and form as corporations are required to make such returns.  *See
> also* 26 C.F.R. § 1.6012-3(b)(4).

16. Further, Section 6402(k) of the Internal Revenue Code provides:

> Notwithstanding any other provision of law, in the case of an
> insolvent corporation which is a member of an affiliated group of
> corporations filing a consolidated tax return for any taxable year
> and which is subject to a statutory or court-appointed fiduciary, the

---

[4]  The FDIC-R acknowledges that there is a circuit split on the issue of whether the automatic stay applies to certain actions taken by the FDIC-R notwithstanding FIRREA, and that certain courts have held that 12 U.S.C. § 1821(j) does not exempt the FDIC-R from operation of the automatic stay where the actions of the FDIC-R might affect property of the estate.  *See Sunshine Dev. v. FDIC*, 33 F.3d 106 (lst Cir. 1994); *In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992).  The FDIC-R respectfully submits that these courts have not appropriately interpreted the explicit, preclusive language in this anti-injunction provision, and the FDIC-R reserves all of its rights in this regard. However, in an abundance of caution, the FDIC-R by this Motion seeks, in the alternative, relief from the automatic stay in the event that this Court holds that the automatic stay applies.

Secretary may by regulation provide that any refund for such taxable year may be paid on behalf of such insolvent corporation to such fiduciary *to the extent that the Secretary determines that the refund is attributable to losses or credits of such insolvent corporation.*

26 U.S.C. § 6402(k) (emphasis added). The applicable regulations are found in Treas. Reg. § 301.6402-7.

17. For the purposes of the Internal Revenue Code, the FDIC-R constitutes a "fiduciary" to whom such refund may be remitted. *See* Treas. Reg. § 301.6402-7(b)(3)(i). Importantly, Treas. Reg. § 301.6402-7(b)(3) provides, in pertinent part, that a "fiduciary is (i) the Federal Deposit Insurance Corporation; . . . (iii) in its capacity as an authorized receiver or conservator of an insolvent financial institution."

18. In order to inform the IRS of its fiduciary status, the fiduciary must file a Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, with the applicable Internal Revenue Service Center. *See* Treas. Reg. § 301.6402-7(d)(1) ("To satisfy the notice requirement of this paragraph (d)(1), the fiduciary must file Form 56–F, Notice Concerning Fiduciary Relationship of Financial Institution, with the Internal Revenue Service Center indicated on the form"). The FDIC-R filed a Form 56-F on March 22, 2010. (Thompson Decl. ¶ 6, Ex. B.)

19. The FDIC-R is not bound to accept tax returns filed by a common parent and the FDIC-R may file its own return seeking a refund. In relevant part, Treas. Reg. § 301.6402-7(e)(1) provides that "[i]f . . . the fiduciary does not accept a claim for refund filed by the common parent, the fiduciary may claim a refund under this section by filing its own claim for refund under section 6402." *See also* Treas. Reg. § 301.6402-7(e)(3) ("If the institution is a member of a loss year group, and either the common parent does not file a loss year return or the fiduciary does not accept the loss year return filed by the common parent, the fiduciary may file

a loss year return with respect to the loss year group. A loss year return can only be filed by the fiduciary in conjunction with the filing of a claim for refund under paragraph (e)(1).").

20.     If a fiduciary elects to file a claim for a refund or an application for a tentative carryback adjustment pursuant to the aforementioned provisions, the IRS "may, in its sole discretion, pay to the fiduciary all or any portion of the refund or tentative carryback adjustment that the Internal Revenue Service determines under this section to be attributable to the net operating losses of the institution." Treas. Reg. § 301.6402- 7(g)(i).

21.     Importantly, Treas. Reg. § 301.6402-7(j) provides that the procedures established by this section are "not determinative of ownership of any such amount among current or former members of a consolidated group (including the institution)," but merely determine the party to whom the IRS will pay a refund or tentative carryback adjustment.

## III.     THE FILING OF CONSOLIDATED TAX RETURNS PRIOR TO ADVANTA'S BANKRUPTCY

22.     The Internal Revenue Code authorizes affiliated groups to file consolidated income tax returns. Section 1501 of the Internal Revenue Code provides that "an affiliated group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by [the Internal Revenue Code] for the taxable year in lieu of separate returns." (26 U.S.C. § 1501). Consistent with Section 1501, the Secretary of the Treasury has promulgated regulations that allow a parent holding company to file a consolidated tax return as agent for its subsidiaries. *See* 26 C.F.R. § 1.1502-77.

23.     On information and belief, since 1995, Advanta and the Consolidated Group, which included and continues to include ABC, has elected to file consolidated federal income tax returns under Section 1501 of the Internal Revenue Code. They did so in conformance with the TSA. (Thompson Decl. Ex. A.)

## IV.    THE 2009 CONSOLIDATED TAX RETURN FILED BY ADVANTA

24.    The Consolidated Group is a calendar year taxpayer and its federal tax return for the 2009 tax year was due on or before March 15, 2010.   The Consolidated Group had consolidated net operating losses totaling $8,123,872 and $628,081,799 in the 2008 and 2009 taxable years, respectively.    (Thompson Decl. ¶ 7.)    It is estimated that approximately $544,000,000 of the 2009 consolidated net operating loss is attributable to the operations of ABC.  Id.

25.    ABC requested that Advanta, as common parent and agent of the Consolidated Group for the purposes of the consolidated return regulations, file a consolidated return for the 2009 taxable year electing to apply the modified carryback rule of IRC § 172(b)(1)(H), which provides that taxpayers may carryback the 2008 or 2009 NOLs up to five years.  At that point in time ABC was not under FDIC receivership.  (Goldman Decl. ¶¶ 6-9.)  However, according to the evidence submitted by ABC, Advanta was not responsive to ABC's request. In fact, Advanta was not responsive to any efforts by ABC to find out what was being done with regard to the 2009 tax return. *Id*.

26.    Advanta e-filed the 2009 Consolidated Return on March 14, 2010, but did not elect the Five-Year NOL Carryback with respect to the Consolidated Group's 2009 NOLs. (Thompson Decl. ¶ 8.)  Instead, Advanta elected to waive the Five-Year NOL Carryback with respect to the Consolidated Group's 2009 NOL.  *Id*.  The same day, Advanta also filed an amended 2008 Consolidated Return electing the Five-Year NOL Carryback with respect to the Consolidated Group's 2008 NOLs.  *Id.*

27.    In its objection to ABC's Injunction Motion ("Advanta Injunction Motion Objection"), Advanta has admitted that if the Five-Year NOL Carryback election had been made with respect to the 2009 NOL, "the [G]roup would be entitled to an approximately $54 million

refund" and "ABC has . . . laid claim to all or a portion of the potential refund." (Advanta Injunction Motion Objection ¶ 23.) Advanta also asserts that, if the election had been made, it would have exposed Advanta to a claim under the TSA of up to $170 million based on the hypothetical tax refund ABC would have been entitled to if it a filed separate return for the 2009 taxable year and elected the Five-Year NOL Carryback with respect to its 2009 NOLs. (Declaration of Philip M. Browne ("Browne Decl.") ¶ 9.) This would purportedly result in Advanta and its creditors receiving no value from "monetizing" the NOLs using the five-year carryback rule. Advanta therefore decided to harm ABC by depriving it of its $54 million refund, in order to "mitigate the possibility of incurring a $170 million claim." (Advanta Injunction Motion Objection ¶ 24.)

28.     However, that possibility has not been "mitigated." By waiving the Five-Year NOL Carryback, Advanta at minimum breached the TSA, giving rise to *a $170 million claim* by ABC that Advanta asserts it sought to avoid.[5] Allowing the 2008 and 2009 Consolidated Tax Returns filed by Advanta to stand thus provides no benefit to Advanta's estate and instead deprives it of a $54 million refund that it is entitled to now.

## JURISDICTION

29.     This Bankruptcy Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion requests declaratory relief and is therefore brought within this adversary proceeding pursuant to Fed. R. Bankr. P. 7001(7).

---

[5] In addition, in October 2009, Advanta filed a Form 1139 with the IRS claiming a refund of $1,469,206 resulting from a carryback of 2008 NOLs incurred of $8,123,872. (Thompson Decl. ¶ 10.) Advanta utilized the two-year carryback rule. Id. On information and belief, Advanta has received the refund but ABC has not received any of the funds. Id.

## RELIEF REQUESTED

30.     By the Motion, the FDIC-R seeks (1) a declaration by this Court that the automatic stay need not be lifted to allow the FDIC-R to file FDIC-R Returns for the 2008 and 2009 taxable years of the Consolidated Group, or alternatively (2) entry of an order lifting the automatic stay, to the extent that it is deemed to apply and may be required, so that the FDIC-R may exercise as a fiduciary of ABC the Tax Rights including, among other things, submitting and filing a FDIC-R Return for the 2008 and 2009 taxable years of the Consolidated Group.

## BASIS FOR RELIEF REQUESTED

## I.     THE AUTOMATIC STAY SHOULD NOT APPLY TO THE FDIC-R'S EXERCISE OF THE TAX RIGHTS

31.     Section 362(a) of the Bankruptcy Code effectuates a stay of, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(3) and (a)(6). The stay is not applicable to actions that neither take possession of estate property nor exercise control over it. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995) (holding that bank's action of placing an administrative freeze on debtor's account pending resolution of the bank's right of setoff did not violate the automatic stay because the temporary refusal to pay was neither a taking of possession of debtor's property nor an exercising of control over it).

32.     By taking these proposed actions to, among other things, file FDIC-R Returns for the 2008 and 2009 taxable year of the Consolidated Group, the FDIC-R neither seeks to take possession of estate property nor exercise dominion over it. Rather, the FDIC-R wishes to satisfy the obligations and exercise the rights granted to it under Sections 6012(b)(3) and 6402(k) of the Internal Revenue Code and Treas. Reg. § 310.6402-7 to file loss year tax returns

and claims for refunds, in its capacity as a fiduciary of a failed depository institution, and such other actions as may be required to protect and preserve the Receivership's interest in such tax proceeds.

33.     The relief sought by the FDIC-R has no bearing on any future dispute over the ownership of any refund paid by the IRS.  As explicitly stated in Treas. Reg. § 301.6402-7(j), a payment by the IRS to the FDIC-R is "not determinative of ownership of any such amount among current and former members of the consolidated group (including the institution)," but merely serves to discharge the IRS's liability to remit previously overpaid amounts to an agent of a consolidated group.  By filing the FDIC-R Return, the FDIC-R wishes to maximize any tax refund based on the NOLs.  The FDIC-R will place the proceeds from any refund into an escrow account until the ownership of those proceeds is determined.

34.     Exercise by the FDIC-R of its rights as a fiduciary of a failed depository institution under the aforementioned applicable tax law is thus pursuant to, and consistent with, its statutory duties under Title 12 to, among other things, file tax returns on behalf of ABC and preserve and conserve the assets and property of such institution.  *See* 12 U.S.C. § 1821(d)(2)(B)(iv); 26 C.F.R. § 1.6012-3(b)(4).

**II.     TO THE EXTENT THAT IT IS DEEMED TO APPLY AND MAY BE REQUIRED, CAUSE EXISTS TO LIFT THE STAY TO ALLOW THE FDIC-R TO EXERCISE ITS TAX RIGHTS**

35.     Should the Bankruptcy Court determine that the automatic stay applies to the FDIC-R's exercise of the Tax Rights, the stay should be lifted.

36.     Section 362(d)(1) of the Bankruptcy Code provides in pertinent part that:

> the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).  The FDIC-R bears the burden of showing that such cause exists.  *See* 11 U.S.C. § 362(g).

37.     While the Bankruptcy Code does not define "cause," it is a flexible concept, and whether sufficient cause exists to lift the stay is determined by the totality of the circumstances on a case-by-case basis.  *See In re Wilson*, 116 F.3d 87, 90 (3rd Cir. 1997); *In re The Sco Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

38.     This Court has developed a three-prong balancing test to determine whether to grant relief from the stay, which involves the consideration of the following factors:  (1) whether any great prejudice to either the bankrupt estate or the debtor will result from granting the relief, (2) whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor, and (3) the probability of the creditor prevailing on the merits.  *See In re The Sco Group, Inc.*, 395 B.R. at 857; *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).  Here, there is sufficient "cause" to warrant relief from the automatic stay.

39.     First and foremost, Advanta's estate will not be prejudiced by the lifting of the automatic stay.  As Advanta has admitted, had Advanta elected the Five-Year NOL Carryback, ABC would have a claim against Advanta's estate for $170 million.  (Advanta Injunction Motion Objection ¶¶ 2, 19, 24, 33; Browne Decl. ¶ 9.)  However, by *not electing* the Five-Year NOL Carryback, Advanta breached the TSA and, as a result, has exposed itself to a breach of contract claim and tort claims with damages of at least $170 million.[6]

---

[6] The FDIC-R has filed a proof of claim asserting this claim and others, including tort claims, against Advanta as a result of its improper waiver of the Refund to the detriment of its wholly-owned subsidiary, ABC.

40.     The TSA was intended to benefit its members through the filing of a consolidated tax return.  (Thompson Decl. Exhibit A at 1-2.)  This is made clear in the fourth introductory whereas clause of the TSA, which states:

> WHEREAS, it is the intention of the parties that if such consolidated returns are filed, each Member company should contribute its fair and equitable share to the taxes payable by the Affiliated Group or compensation for the reduction in the net operating loss deduction, capital loss deduction, or other tax benefit of the Affiliated Group resulting from the inclusion of the Member companies in the Affiliated Group, but that in any event, ***the filing of such consolidated returns shall be beneficial rather than disadvantageous to each Member company and that each Member company should not with respect to any year, or part thereof, for which it is a Member of the Affiliated Group be required to pay more in lieu of taxes or receive a payment in lieu of a refund less than it would have paid or received if the Member company had at all times computed and paid its tax liability on a separate return basis.***  It is intended that this will comply with the pro rata method as described in SFAS 109 and its interpretation and all consideration of regulatory accounting principles.

(Emphasis added.)

41.     The TSA also states that no member shall pay more than any other member or more than they would have by filing a separate return.  Paragraph 2(a) of the TSA states:

> If on any Adjustment Date there is a Separate Member Tax and the tax payment then due from the Affiliated Group is in excess of the amount of the Separate Member Tax, then the Member shall pay to Advanta Corp. an amount equal to the Separate Member Tax.  ***No member shall pay to Advanta Corp. an amount in excess of the amount which would have been payable on a separate company basis.***

(Emphasis added.)

42.     However, by Advanta's own admission, Advanta's waiver caused ABC to lose a $54 million refund that it would have otherwise received, in addition to $116 million in cash that would have been payable to ABC had Advanta elected the carryback.  (Advanta Tax Objection ¶¶ 8, 23-25; Browne Decl. ¶ 9.)  ABC thus effectively paid more than it would have paid had it filed separately, without receiving any compensation or consideration for its sacrifice.

43.     The TSA also provides that where a member is injured as a result of the filing of a consolidated return, a member pays more than the other members, or a member is deprived of a tax benefit it would otherwise receive, the TSA provides that Advanta is to pay the member the difference.  This remedy is articulated in Paragraph 4:

> If on any Adjustment Date the separate return computation for a Member would show a loss but not a Separate Member Refund, ***Advanta Corp. shall pay to the Member an amount equal to the amount of the loss which results in a tax benefit***, determined in a manner consistent with the allocation of tax due to taxable Members, from those losses on the consolidated return.

(Emphasis added.)

44.     By abandoning the $54 million refund that would have belonged to ABC, and by not making ABC whole, Advanta *inter alia*, breached its fiduciary duties under the TSA as well as the TSA itself, giving rise to the very claim by ABC that Advanta disingenuously claims that it sought to avoid.  Waiving the Five-Year NOL Carryback thus provides *no benefit* to the estate and instead deprives it of a $54 million refund to which it is entitled this year and could have been used to offset part of the $170 million claim payable to ABC pursuant to the TSA.

45.     Second, the FDIC-R will face substantial hardship if the stay is not lifted. Advanta's decision not to elect the Five-Year NOL Carryback, without consulting with ABC or responding to ABC's request that Advanta take the election, harmed ABC in an amount estimated at no less than $170 million.  Preventing ABC from filing an amended tax return would work a substantial prejudice on the FDIC-R, as successor to ABC, because most, if not all, of the $54 million refund is predicated upon operating losses incurred by ABC.  Were the FDIC-R unable to preserve its rights by invoking Sections 6012(b)(3) and 6402(k) of the Internal Revenue Code and related regulations, Advanta could gain a windfall, while the FDIC-R, which represents the interests of all taxpayers, could be hindered in its ability to seek the equitable

allocation of the refund. The FDIC-R should be permitted to exercise the Tax Rights in order to (i) officially state its claim to all or a portion of the $54 million refund to which it is entitled, and (ii) preserve its rights with respect to such a claim and prevent the possibility that the FDIC-R, in not taking the action that it has a right and a fiduciary duty to take, could be deemed to have waived any right it has to all or a portion of the $54 million refund. *See United States v. Rodrigues*, 159 F.3d 439, 448 (9th Cir. 1998) (faulting the RTC for "complain[ing] about a situation it could have prevented from arising" because it failed to exercise its right, under Treas. Reg. § 301.6402-7, to apply for the tax refunds due the failed depository institution for which it was a conservator).

46. The third prong of the lift stay test, the movants' likelihood of success on the merits, requires only a "very slight" showing. *See Rexene Prods.*, 141 B.R. at 578 (citing *In re Peterson*, 116 B.R. 247, 250 (D. Colo. 1990) (merits analysis irrelevant when party seeks merely to liquidate a claim)). As discussed above, Sections 6012(3)(b) and 6402(k) of the Internal Revenue Code and Treas. Reg. § 301.6402-7 clearly permit the FDIC-R to file an FDIC-R Return and claim and receive refunds of federal income taxes with respect to the NOLs attributable to ABC. ABC's contribution to the consolidated net operating losses of the Consolidated Group in the 2009 taxable year are admitted by Advanta. Therefore, the FDIC-R's likelihood of success with respect to having the FDIC-R Returns it files accepted and acted upon by the IRS is very high.

47. In addition, there is a substantial body of case law that holds that a member of a consolidated group is entitled to a tax refund arising from the filing of a consolidated tax return, where the refund sought constitutes either taxes paid by the consolidated tax group member or losses sustained by that member in the years at issue. *See, e.g., Capital Bancshares v. FDIC*,

957 F.2d 203, 208 (5th Cir. 1992) (holding that FDIC was entitled to the tax refund where the bank generated the losses and the bank paid to the parent company a sum greater in aggregate than the disputed refund for its annual tax contribution); *In re Revco D.S., Inc.*, 111 B.R. 631, 637 (Bankr. N.D. Ohio 1990) (holding that income tax refund belonged to the former subsidiary member of consolidated group where the NOL was entirely attributable to the subsidiary and the refund sought represented the income taxes paid by income generated by the subsidiary); *FDIC v. Mercer Bancorp, Inc.*, No. 89-0849, 1990 WL 515173, at *2 (W.D. Mo. Dec. 5, 1990) (holding that FDIC, as receiver of subsidiary bank, was entitled to the tax refund because the bank was the entity who overpaid the tax which the IRS refunded and the entity upon whose business losses the refund was based); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 438 F. Supp. 185, 188-89 (E.D. Mo. 1977), *aff'd*, 579 F.2d 449 (8th Cir. 1978) (holding that bankrupt subsidiary was entitled to its share of the refund generated by its losses and the unrecovered taxes it previously paid, and parent held this portion in specific trust); *In re Florida Park Banks, Inc.*, 110 B.R. 986, 989 (Bankr. M.D. Fla. 1990) (holding that FDIC, as receiver for bank subsidiary, was entitled to the entire tax refund of taxes previously paid by the bank subsidiary and that resulted from its NOLs); *see also In re Bob Richards Chrysler-Plymouth Corp.*, 473 F.2d 262, 265 (9th Cir. 1973).

48.     The parent, as agent for the consolidated group for the purposes of administrative convenience in connection with the filing of consolidated tax returns, holds any tax refunds remitted by the IRS on account of such filing in trust for the members of the consolidated group, and is under a duty to return the tax refund to the appropriate member.  *Bob Richards*, 473 F.2d at 265.  This principal-agent relationship cannot be overridden by a tax sharing agreement unless such an intention is expressly or impliedly manifested in a written agreement, and even then the

court must examine the economic reality of the transaction rather than the words used. *See BSD Bancorp, Inc. v. FDIC*, No. 93-12207-A11 (S.D. Cal. 1995) (a copy of this opinion is attached as Exhibit C to the Thompson Declaration). None of these grounds is present here. Given the foregoing jurisprudence, the FDIC-R meets the minimal standard for likelihood of success enunciated in *Rexene*.

## CONCLUSION

49.    The FDIC-R's exercise of the Tax Rights will cause no undue harm or prejudice to Advanta's estate, as the exercise of the Tax Rights merely preserves the FDIC-R's rights in accordance with its statutory and fiduciary duties as Receiver of ABC. As a result, the automatic stay does not apply or, to the extent that it is deemed to apply and may be required, should be lifted so that the FDIC-R may proceed with the exercise of its Tax Rights.

Therefore, the Motion should be granted.

Dated: May 14, 2010                Respectfully submitted,
     Wilmington, Delaware

                                  PINCKNEY, HARRIS & WEIDINGER, LLC

                         **/s/ Adam Hiller**
                        Adam Hiller (DE No. 4105)
                        Donna Harris (DE No. 3740)
                        1220 North Market Street, Suite 950
                        Wilmington, Delaware 19801
                        (302) 504-1497 telephone
                        (302) 442-7046 facsimile
                        *ahiller@phw-law.com*

                        -and-

Geoffrey T. Raicht, Esquire
Andrew B. Kratenstein, Esquire
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York  10173
(212) 547-5679 telephone
(212) 547-5444 facsimile
*graicht@mwe.com*
*akratenstein@mwe.com*

-and-

Kathryn R. Norcross (of counsel)
Senior Counsel
Dennis J. Early (of counsel)
Counsel-Legal Division
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive, VS-D-
Arlington, VA  22226
(703) 562-2783
Email: knorcross@fdic.gov
Email: dearly@fdic.gov

*Attorneys for FDIC-R*