# Weil, Gotshal & Manges llp

767 FIFTH AVENUE • NEW YORK, NY 10153-0119

(212) 310-8000

FAX: (212) 310-8007

BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

June 3, 2010

Hon. Kevin J. Carey, Chief Judge
United States Bankruptcy Court for the
    District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

      Re:    In re Advanta Corp., et al., Chapter 11 Case No. 09-13931 (KJC)
             (Jointly Administered) -- Advanta Bank Corp. v. Advanta Corp.,
             Adv. Pro. No. 10-50795 (KJC)

Dear Judge Carey:

      We are counsel for debtor Advanta Corp. ("***Advanta***"), the defendant in the above-referenced adversary proceeding brought by Advanta Bank Corp. ("***ABC***"), now in receivership by the Federal Deposit Insurance Corp. (the "***Receiver***"). We are writing at the Court's direction to address the appropriate scheduling for (a) the relevant portion of ABC's proof of claim (the "***PoC***") and (b) the two pending motions being prosecuted by the Receiver in the adversary proceeding, all of which put the proper construction of the Tax Sharing Agreement (the "***TSA***") between Advanta and various subsidiaries, including ABC, at issue. The two motions are: (i) the March 19, 2010 Emergency Motion for Declaratory and Injunctive Relief (Adv. Proc. D.I. 9); and (ii) the May 14, 2010 Motion for Relief From the Automatic Stay (Adv. Proc. D.I. 25) (the "***Lift Stay Motion***" and, collectively, the "***Motions***").

      A.    <u>Scheduling</u>. The Motions and a substantial portion of the PoC are predicated on the Receiver's claim that the debtors' April 14, 2010 filing of an amended 2008 tax return and a 2009 tax return for Advanta's consolidated tax group (which includes ABC), in which Advanta made certain elections, breached the TSA. Advanta vigorously disputes this assertion and the Receiver's underlying interpretation of the TSA that it obligated Advanta to utilize its discretion

Hon. Kevin J. Carey
June 3, 2010
Page 2

under the TSA to make elections which benefited <u>ABC</u> rather than Advanta and its creditors. The resolution of this dispute will have a major impact on creditor recoveries: namely, to what extent, and in what priority, does ABC have claims under the TSA as a result of the tax elections made by Advanta?

Given the importance of these questions, Advanta believes it should be allowed discovery into the parties' application and construction of the TSA, regardless of whether the Court chooses to conduct a consolidated trial on all TSA and tax election issues.

In addition, Advanta believes that the Court will need to hear expert accounting testimony to address the Receiver's assertion of a breach of the TSA in both the Motions and the PoC because the TSA expressly incorporates accounting rules. Paragraph 1 of the TSA requires a computation of each group member's separate tax consistent with GAAP. Further, in the Motions, the Receiver cited only three passages from the TSA to support its claim that the tax elections breached the TSA. One of those three provisions, the final "Whereas" clause (which Advanta believes the Court may not need to consider), provides that the tax liability of a member of the group, such as ABC, "will comply with the pro rata method as described in SFAS 109 [a piece of accounting literature] and its interpretation and all consideration of regulatory accounting principles." TSA at 2. In light of this, Advanta believes it should be allowed to introduce expert testimony about the referenced accounting rules.

As to discovery, the Third Circuit has recognized that "a short delay so that an evidentiary record may be developed is to be preferred rather than making an ill-informed decision on allegations alone." *In re Kensington Intern. Ltd.*, 353 F.3d 211, 224 (3d Cir. 2003). The Court there noted that, "[w]e are reluctant to act in a complex situation such as this one, where so many vital interests are at stake, without a developed evidentiary record." *Id.* at 223; *see also In re NorVergence, Inc.*, 384 B.R. 315, 372 (Bankr. D.N.J. 2008) ("[p]laintiff has been prejudiced in its ability to respond to [the defendant's] motion for summary judgment and should be afforded an opportunity to at least conduct the relevant discovery necessary to respond to [the defendant's] motion").

Given the foregoing, Advanta believes that, as a matter of judicial economy and to conserve estate resources, the Motions should be determined along with any and all claims that ABC asserts under the TSA and in respect of the tax elections. As set forth below, Advanta proposes an aggressive schedule that requires the Receiver to assert all of its claims relating to the TSA in the near term and allows for discovery, experts, and briefing, with a trial as early as October (depending on the Court's availability).

We believe that this approach, providing for a determination in one proceeding of all the TSA and tax election issues, makes sense for several reasons.

<u>First</u>, the Receiver has asserted a TSA breach in the Motions and in its contract and tort claims in the PoC, including some with alleged administrative priority. We do not believe it

makes sense to litigate motions predicated on that breach without actually litigating the alleged breach and any other claims arising from the tax elections.

Second, the complaint in this adversary proceeding already has been amended and the Receiver has informed us that it might seek to amend again. The piecemeal approach will keep Advanta and this case on a litigation treadmill.

Third, should the Court disagree with Advanta and agree with the Receiver that ABC has an approximately $170 million claim against Advanta under the TSA, Advanta would likely support the Receiver's filing of competing returns to make alternative elections. Advanta would then work with the Receiver to seek payment of the refund from the IRS because, under those circumstances, the IRS's payment of the refund would be in Advanta's creditors' best interest. Advanta, however, will not know whether that course is the best approach until the Court issues its final ruling on ABC's claims regarding the tax elections.

Finally, as discussed in Part C below, ABC is not harmed by Advanta's proposed schedule because there is no deadline to file a competing return.

    B.    Discovery. Advanta believes that, at a minimum, it is entitled to:

- A report from and a deposition of any expert the Receiver plans to call.
- A deposition of any fact witness the Receiver plans to call.
- All documents related to the negotiation, drafting, and construction of the TSA.
- All documents, including but not limited to emails, financial models, and books and records, regarding the application of the TSA over the past five years.
- All documents, including but not limited to emails, financial models, and books and records, regarding how ABC and the Receiver have accounted for taxes or refunds owed, or allegedly owed, to ABC over the past five years.
- All documents related to communications with the IRS regarding the filing of a competing return, including the existence or non-existence of a deadline.
- All documents related to accounting principles as referenced by the TSA.

    C.    There is No Harm to ABC and No September 15 Deadline. It was suggested by the Receiver during the recent status conference that there is a September 15, 2010, deadline to file a competing tax return. There is no such deadline.

In April, Advanta timely (i) amended the 2008 federal income tax return for the consolidated group, electing the five-year carryback of the group's 2008 NOL (as permitted by recent legislation and IRS procedures), and (ii) filed the 2009 return for the consolidated group, waiving the carryback of the group's 2009 NOL. The five-year carryback is available only for

2008 or 2009.  *See* 26 U.S.C. § 172(b)(1)(H)(iii)(I).  The election, if made, is irrevocable once the time for filing a return has passed, which it has.  *See* 26 U.S.C. § 172(b)(1)(H)(iii)(II).

In referring to a September 15th deadline, the Receiver seemingly was referencing the six-month extension of time *sometimes* permitted for making elections.  *See* 26 C.F.R. §§ 301.9100-1 and -2.  Such an extension only applies, however, if the taxpayer *originally failed to make the election.  See id.*  (As relates to the five-year carryback, a recently released IRS Q&A illustrates this.  *See* http://www.irs.gov/newsroom/article/0,,id=217370,00.html, Q&A 7.)  Here, Advanta timely elected the five-year carryback for 2008.  Thus, no such election is available for 2009, and there is no September 15th deadline.

Moreover, ABC's receivership did not commence, and the Receiver was not appointed, until after the March 15th due date for the 2009 tax return.  The relevant regulation, 26 C.F.R. § 301.6402-7 (the "***6402-7 Regulation***"), pursuant to which the Receiver can act as a co-agent of the consolidated group *for certain limited purposes*, is not operative *until* a fiduciary is authorized to act as a receiver or conservator.  *See* 26 C.F.R. § 301.6402-7(a)(1), (b)(4).  As such, it should be interpreted to be prospective in effect, and should not permit the Receiver to file *competing* tax returns for tax years for which the deadline for filing a tax return has passed, and even for tax years that have otherwise closed.  Actions of that type are extraordinary under the tax law, and would not be expected to be left to implication but would be expressed in a clear and unambiguous manner.

But, even if, notwithstanding this, the Receiver were able to convince the IRS to accept different elections, there would still be no deadline applicable to the Receiver.  The IRS would be accepting the Receiver's elections late or, in effect, saying there is no deadline for the Receiver.[1]  In either event, the Receiver would not be facing any deadline.

D.  <u>Intervention of the Official Committee of Unsecured Creditors (the "**Committee**")</u>.  Advanta welcomes the intervention of the Committee.

E.  <u>Proposed Schedule</u>.  Advanta proposes the following schedule:

| Date | Action |
|---|---|
| June 11 | Deadline for Receiver to move to amend complaint to assert any additional claims relating to the TSA or the tax elections. |
| June 16 | Document requests (no RSAs or interrogatories allowed). |

---

[1] 26 U.S.C. § 301.6402-7(f) provides that the IRS, in its sole discretion, can adjust the common parent's properly-filed return or accept or adjust the competing return filed by the fiduciary.  Accordingly, either the IRS requires that the Receiver's competing return be timely filed, which is not possible since the filing deadline passed even before ABC was put into receivership, or the IRS can take the Receiver's competing return into account regardless of any filing deadline.  In any event, there would be no prejudice to the Receiver by waiting several months to try to file a competing return.

**Weil, Gotshal & Manges** LLP

Hon. Kevin J. Carey
June 3, 2010
Page 5

| Date | Action |
|---|---|
| June 24 | Responses to document requests due. |
| July 2 | Exchange identification of fact and/or expert witnesses. |
| July 21 | Completion of document production. |
| August 13 | Completion of fact depositions and discovery (including 3rd party). |
| August 18 | Filing by debtors and Committee of answers and/or motions to dismiss complaint and objection to relevant portions of PoC. |
| September 3 | Exchange of expert reports. |
| September 8 | Production of expert documents. (Report drafts and communications with counsel not discoverable.) |
| September 16 | Completion of expert depositions. |
| September 16 | Filing by Receiver of response to Debtors' and Committee's filings regarding the complaint and PoC. |
| September 30 | Filing by Debtors and Committee of replies to Receiver's response. |
| October 1 | Advanta to serve a draft Joint Pre-Trial Order ("***JPTO***"). |
| October 8 | Delivery by Receiver to Advanta of Response to Draft JPTO. |
|  | Filing of JPTO 3 Business Days Before Trial. |

If the Court rules that the Motions should be addressed at a hearing prior to a full trial, Advanta proposes the following alternative schedule:

| Date | Action |
|---|---|
| June 11 | Document requests (no RSAs or interrogatories allowed). |
| June 16 | Responses to document requests. |
| June 18 | Exchange identification of fact and/or expert witnesses. |
| June 25 | Completion of document production. |
| July 9 | Completion of fact depositions and discovery (including 3rd party). |
| July 14 | Exchange of expert reports. |
| July 16 | Production of expert documents. (Report drafts and communications with counsel not discoverable.) |
| July 23 | Completion of expert depositions. |
| July 30 | Filing by Debtors & Committee of final objection to Lift Stay Motion. |
| August 6 | Filing by Receiver of final reply to Lift Stay Motion. |

If the Court so wishes, mediation could proceed on a parallel track to either schedule.

Respectfully submitted,

/s/ Robert Lemons

Robert J. Lemons
of WEIL, GOTSHAL & MANGES LLP