# Pinckney, Harris & Weidinger, LLC

1220 N. Market Street, Suite 950
Wilmington, Delaware 19801
Telephone (302) 504-1497
Facsimile (302) 655-5213

Adam Hiller, Esquire
Direct Dial (302) 504-1527
Direct Facsimile (302) 442-7046
ahiller@phw-law.com

June 3, 2010

VIA ELECTRONIC FILING
AND HAND DELIVERY
Honorable Kevin J. Carey, Chief Judge
United States Bankruptcy Court
  for the District of Delaware
824 North Market Street, 5th Floor
Wilmington, DE 19801

  Re: Advanta Bank Corp. v. Advanta Corp., Adv. Proc. No. 10-50795-KJC

Dear Judge Carey:

  We represent The Federal Deposit Insurance Corporation as Receiver ("FDIC-R") of Advanta Bank Corp. ("ABC"), in the above-referenced adversary proceeding. I write pursuant to the Court's instruction at the conclusion of the conference held on May 26, 2010, that the parties each submit a letter to the Court proposing how this litigation should proceed.

  The FDIC-R proposes a phased approach to the litigation that is reasonable, fair, and efficient. At bottom, the phases are designed to result an adjudication of this matter as soon as possible and no later than September 15, 2010 – the deadline by which action must be taken to file a tax return preserving the $54 million tax refund at issue (the "Refund"). If the Court determines in phase one that the FDIC-R is not entitled to file that return, the parties would proceed to phase two and litigate whether Advanta Corp. ("Advanta") is liable to the FDIC-R for damages and, if so, the quantum of damages.

  By contrast, Advanta and the Official Committee of Unsecured Creditors (the "Committee")[1] propose that the parties immediately commence extensive discovery on all of the FDIC-R's claims – even though the FDIC-R's legal claims may be rendered moot by the resolution of the Motions – with a trial to follow in October. That approach would result in this matter being resolved *after* the deadline by which action must be taken to secure the Refund,

---

[1] The FDIC-R consents to the Committee's request to intervene in this particular adversary proceeding, but does not in any way concede that the Committee has any legal right to do so. The FDIC-R reserves the right to oppose any future requests for intervention. The FDIC-R also notes that the briefs filed by the Committee to date have been largely duplicative of the briefs filed by Advanta, thus unnecessarily running up the legal fees of the estate.

rendering any win for the FDIC-R a pyrrhic victory at best.  It would also needlessly impose burdens on the parties and the Court while running up both the estate's and the FDIC-R's (and thus the American taxpayers') legal bills.  Accordingly, Advanta's and the Committee's scheduling proposal should be soundly rejected.

## Phase One:  Decide The Pending Motions

There are two motions ("Motions") currently pending:  (1) ABC's Emergency Motion for Declaratory and Injunctive Relief In Connection With Amended Complaint (the "Injunction Motion") and (2) the FDIC-R's Motion Seeking a Declaration That The Automatic Stay Does Not Apply Or, In The Alternative, An Order Granting Relief From The Automatic Stay (the "FDIC-R Return Motion").

The purpose of the Motions is to prevent the Refund from being lost to the detriment of Advanta's and ABC's estates.  All that the Court needs to consider with respect to the Motions are:  (1) the law; (2) the language of the contract at issue (which the parties agree is unambiguous); and (3) Advanta's admissions.  There is no need for discovery, expert reports, an evidentiary hearing, or a trial.

The essential facts giving rise to the Motions are undisputed.  On March 14, 2010, Advanta e-filed a 2009 consolidated tax return (the "2009 Consolidated Return") for Advanta and its affiliated group of corporations (the "Consolidated Group").

The members of the Consolidated Group are parties to a Tax Sharing Agreement ("TSA").[2]  The TSA provides in pertinent part that each member of the Consolidated Group will not pay more, or suffer a greater loss, than the other members, that no member will pay an amount in excess of what it would have paid on a separate return, and that where a member is injured, that member will be compensated for its loss.  This is made clear, among other places, in the fourth introductory "Whereas" clause of the TSA, which states in pertinent part:

> [T]he filing of such consolidated returns shall be beneficial rather than disadvantageous to each Member company and that each Member company should not with respect to any year, or part thereof, for which it is a Member of the Affiliated Group be required to pay more in lieu of taxes or receive a payment in lieu of a refund less than it would have paid or received if the Member company had at all times computed and paid its tax liability on a separate return basis.

In its tax filing, Advanta elected to abandon the estimated $54 million Refund by failing to make a five-year NOL carryback election (the "Five-Year NOL Carryback").  Advanta now admits that it waived the Refund because, under the TSA, the Refund plus another approximately $116 million would have belonged to ABC had Advanta elected the Five-Year NOL Carryback.

Specifically, Section 3(b) of the TSA states:

---

[2] The TSA is attached to the Injunction Motion as Exhibit A.

> If on any Adjustment Date there is a Separate Member Refund and the Affiliated Group also is entitled to a refund, but such refund is less than the Separate Member refund, Advanta Corp. shall pay to such Member payment in an amount equal to the Separate Member Refund, together with an allocable share of any interest promptly upon receipt of payment from the taxing authority.

Thus, as Advanta admits:

> Had Advanta elected to carry back the 2009 NOL five years, the group would have been entitled to a tax refund of approximately $54 million (the "*Refund*"). However, by making such election, Advanta likely would have exposed itself to a general unsecured claim by ABC under the TSA of approximately $170 million. The amount of up to approximately $170 million is based upon the hypothetical tax refund ABC would have been entitled to if it had filed separate returns and an election to carry back the 2009 tax loss for five years was in effect.

(Declaration of Philip M. Browne In Support of Objection to Injunction Motion ("Browne Decl.") ¶ 9.)

The obvious flip side of Advanta's admission is that, by *waiving* the Refund, Advanta left ABC worse off for participating in the group return than ABC would have been had it filed a separate return. Read together, the fourth Whereas clause and paragraph 3(b) plainly mean that, if the Affiliated Group is "entitled to a refund" that is less than the Separate Member Refund to which ABC would be entitled if it calculated its taxes separately, then ABC is entitled to the Separate Member Refund. As Advanta admits, the Affiliated Group was "entitled to a refund" for the 2009 taxable year and that refund would have belonged to ABC. (Browne Decl. ¶ 9.) However, Advanta waived the Refund, thus depriving ABC of the benefit of the bargain and giving rise to a $170 million claim by ABC against Advanta.

In the Injunction Motion, the FDIC-R asserts that Advanta's decision to waive the Refund for little or no benefit was not an "ordinary course" transaction. Advanta thus violated Section 363(b) of the Bankruptcy Code by failing to seek this Court's approval of the waiver. Advanta also violated Section 365 of the Bankruptcy Code by rejecting the TSA without this Court's approval. Accordingly, the FDIC-R seeks an order declaring the waiver void *ab initio* based on the undisputed facts.[3]

In the FDIC-R Return Motion, the FDIC-R asserts that it has the statutory right as ABC's receiver and "fiduciary" to file a Consolidated 2009 Return electing the Five-Year NOL Carryback. In other words, the FDIC-R can *undo* Advanta's waiver of the Refund.

---

[3] In their Motion papers, neither Advanta nor the Committee assert that there are disputed issues of material fact or identify any discovery that they require. They assert only that interpretation of the TSA requires expert testimony about Generally Accepted Accounting Principles. However, they never explain what the nature of that testimony would be, how it could possibly override the plain language of the TSA, or otherwise alter the outcome of the Motions.

The FDIC-R further contends that Advanta's estate will not be prejudiced if the FDIC-R Return Motion is granted because the FDIC-R will have a claim in the amount of approximately $170 million against Advanta in all circumstances. By contrast, the FDIC-R will be prejudiced if the Refund is lost. Advanta and ABC are therefore both better off if the FDIC-R files the FDIC-R Returns and is able to obtain an approximately $54 million refund that would either belong to Advanta or partially offset the approximately $170 million claim if it is paid to ABC.

Accordingly, in phase one of the litigation, the Court should decide the Motions. If the Court grants at minimum the FDIC-R Return Motion and the Refund is paid, there presumably would be no need to litigate all of the FDIC-R's various contract and tort claims regarding the Refund. Rather, the only issue remaining would presumably be ownership of the Refund. The Refund would be placed in escrow while that issue is resolved.

### The September 15 Deadline

Advanta and the Committee have asserted that a resolution of the Motions can be delayed because there is no deadline by which the FDIC-R must file the FDIC-R Returns. That is utterly false.

Pursuant to Section 172(b)(1)(H)(iii) of the Internal Revenue Code ("IRC") and Rev. Proc. 2009-52, a taxpayer (including a consolidated group) may make the five-year carryback election by attaching a statement to its return (which may be an amended return) for the taxable year in which the "applicable NOL" arises. The return and statement must be filed on or before the due date (including extensions) of the return for the taxpayer's last taxable year beginning in 2009.

Advanta's Consolidated 2009 Return was due on March 15, 2010. However, Treasury Regulation Section 301.9100-2(b) provides for an *automatic six-month extension* from the due date of a return excluding extensions for the making of a "statutory election" whose due dates are the due date of the return or the due date of the return including extensions. To be entitled to this six-month extension, the taxpayer must have timely filed its return for the year the election should have been made and the taxpayer must take "corrective action" pursuant to the regulations within that six-month extension period. 26 C.F.R. § 301.9100-2(b).

Further support for this interpretation of the statute and regulations is found in IRS Publication 536 – Net Operating Losses (NOLs) for Individuals, Estates, and Trusts for use in preparing 2009 returns. The section dealing with special rules for 2008 or 2009 NOLs states:

> An election to apply a 3, 4, or five-year carryback period must be filed by the due date (including extensions) for filing your 2009 return. ***If you filed your return on time without making the election, you can still make the election on an amended return filed within 6 months of the due date of the return*** (excluding extensions) by attaching the election to the amended return, and writing "Filed pursuant to section 301.9100-2" on the election statement.

(Emphasis added.) Thus, the FDIC-R has no later than September 15, 2010 to elect the application of the five-year carryback rule with respect to the 2009 NOLs attributable to ABC. The FDIC-R is not aware of any "work around" for this deadline.

Although September 15 is the last date by which the FDIC-R Returns can be filed, the FDIC-R respectfully requests that the Court decide the Motions as soon as possible so that, if the Motions are granted, the FDIC-R can file the FDIC-R Returns as soon as possible. The urgency of a prompt decision is underscored by the possibility of an appeal by Advanta in the event the Motions are granted as a further attempt to frustrate the FDIC-R's right to file the FDIC-R Returns.

Advanta and the Committee also concede in their Motion papers that the IRS has discretion not to accept the FDIC-R Returns even if they are timely filed. Accordingly, the sooner the FDIC-R files the FDIC-R Returns, the more likely it is that the IRS will honor the FDIC-R Returns rather than the original elections in the Consolidated 2009 Return filed by Advanta. Common sense dictates that, once the IRS processes the Consolidated 2009 Return, it will be less likely to reopen its consideration of that return if and when the FDIC-R Returns are filed.

### Phase Two

As stated above, if the Court grants the Motions and the Refund is paid, the second phase of the litigation would entail resolution of any dispute over ownership of the Refund. If the Court denies the Motions or the Refund is not paid (and assuming no further action can be taken by the parties to convince the IRS to pay the Refund), then the FDIC-R would amend the complaint to assert the various contract and tort claims that it has asserted in its proof of claim. The parties could then presumably litigate those claims on a standard schedule.

### Conclusion

The phased approach proposed by the FDIC-R is the fairest and most reasonable and efficient way to proceed with this litigation. The Court now has before it two fully-briefed Motions. It should decide those Motions at the earliest possible date. The resolution of those Motions will then determine how the rest of the litigation proceeds. If the FDIC-R wins the Motions and the Refund is saved, this litigation will be substantially narrowed.

By contrast, Advanta's and the Committee's proposal is designed to delay resolution of the Motions, ensure that any victory by the FDIC-R is mooted, and force the parties to engage in protracted litigation that may not ultimately be necessary. The FDIC-R respectfully submits that is not a reasonable, fair, or efficient way to proceed.

Respectfully submitted,

/s/
Adam Hiller

cc:

Mark D. Collins, Esquire
Paul N. Heath, Esquire
Chun I. Jang, Esquire
Zachary I. Shapiro, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Marcia Goldstein, Esquire
Robert J. Lemons, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Howard A. Cohen, Esquire
Drinker Biddle & Reath LLP
1100 N. Market Street, Suite 1000
Wilmington, DE 19801

Mitchell A. Seider, Esquire
Roger G. Schwartz, Esquire
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10003

Geoffrey T. Raicht, Esquire
Andrew B. Kratenstein, Esquire
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173