## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re

ADVANTA CORP., *et al.*,

        Debtors.

------------------------------------------------------------ x

ADVANTA BANK CORP.,

        Plaintiff,

v.

ADVANTA CORP.,

        Defendant.

------------------------------------------------------------ x

Chapter 11

Case No. 09-13931-KJC

(Jointly Administered)

Adv. Proc. No. 10-50795-KJC

## JOINT PRE-EVIDENTIARY HEARING MEMORANDUM

### (Hearing Scheduled for August 16-18, 2010)

Filed: August 13, 2010

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | JURISDICTION | 1 |
| II. | RELIEF REQUESTED | 1 |
| III. | STATEMENT OF UNCONTESTED FACTS | 3 |
| IV. | STATEMENT OF FACTS AND MIXED QUESTIONS OF LAW AND FACT IN DISPUTE | 10 |
| V. | LEGAL ISSUES PRESENTED | 14 |
| VI. | WITNESSES | 19 |
| VII. | EXHIBIT LISTS | 23 |
| VIII. | DISCOVERY ITEMS TO BE INTRODUCED | 24 |
| IX. | LENGTH OF TRIAL | 24 |

Plaintiff Advanta Bank Corp. ("*ABC*"), the Federal Deposit Insurance Corporation (the "*FDIC*") as receiver of ABC (the "*FDIC-R*"), defendant Advanta Corp. ("*Advanta*" or the "*Debtor*"), and the Official Committee of Unsecured Creditors of Advanta (the "*Creditors' Committee*"), by their respective undersigned counsel, file this Joint Pre-Evidentiary Hearing Memorandum in anticipation of the evidentiary hearing scheduled to begin on August 16, 2010 on (i) the Motion of ABC For Declaratory and Injunctive Relief In Connection With Its Amended Complaint against Advanta Corp. (the "*Injunction Motion*"), and (ii) the FDIC's Motion Seeking a Declaration That the Automatic Stay Does Not Apply or, In the Alternative, an Order Granting Relief From the Automatic Stay (the "*Lift Stay Motion*" and, together with the Injunction Motion, the "*Motions*").

## I.

## JURISDICTION

This Court has jurisdiction over the Motions pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.

## RELIEF REQUESTED

1.     By the Injunction Motion, the FDIC-R respectfully requests that this Court enter an Order (i) declaring the Tax Elections void and nullifying the same, and (ii) granting such other and further relief as this Court may deem just and proper.

2.      By the Lift Stay Motion, the FDIC-R respectfully requests that this Court enter an Order (i) holding that, to the extent that the automatic stay applies, it is lifted[1] so that the FDIC-R as fiduciary of ABC may file consolidated federal income tax returns with respect to the 2008 and 2009 taxable years of the Affiliated Group, make certain elections with respect to the carryback of NOLs attributable to ABC and its wholly-owned subsidiary ABRC in those taxable years, claim a refund of taxes with respect to those taxable years, and make any amendments to prior years' returns as may be permitted under law, and (ii) granting such other and further relief as this Court may deem just and proper.

3.      Advanta and the Creditors' Committee respectfully request that this Court enter an Order denying the Motions in their entirety and granting such other and further relief as this Court may deem just and proper. In addition, in the event the Court determines that the Tax Elections were not made in the ordinary course of business, Advanta respectfully requests that this Court approve the Tax Elections retroactively under Sections 105(a) and 363(b) of the Bankruptcy Code. Furthermore, if the Court grants the Lift Stay Motion, Advanta respectfully requests that this Court require the FDIC-R to include in its filing with the IRS of its competing consolidated returns a response to such filing prepared by Advanta so that the IRS may consider Advanta's arguments in determining whether to accept such competing returns.

---

[1] The FDIC-R continues to believe that the automatic stay is not implicated here. However, without making any admission and reserving all of its rights, the FDIC-R no longer seeks a ruling that the stay is inapplicable and will assume for purposes of this litigation that the automatic stay is applicable.

# III.

## STATEMENT OF UNCONTESTED FACTS

### A.    Advanta, ABC, and the Creditors' Committee

1.      Advanta is a Delaware corporation and is the common parent of an affiliated group of corporations, including ABC.

2.      ABC was a Utah-chartered industrial bank.

3.      Prior to May 30, 2009, ABC was one of the largest issuers of business purpose credit cards to small businesses and business professionals in the United States.

4.      Under ABC's banking charter, ABC was authorized to make commercial loans and accept, among other things, deposit accounts insured by the FDIC.

5.      ABC was subject to oversight and regulation by the FDIC and Utah Department of Financial Institutions.

6.      On or about May 30, 2009, ABC ceased originating new business credit card accounts and funding new business credit card receivables and closed all open customer business credit card accounts.

7.      On November 8, 2009 (the "*Petition Date*"), Advanta and certain of its affiliates, but *not* ABC, filed for relief under chapter 11 of title 11 of the United States Code in this Court.

8.      On November 24, 2009, the Creditors' Committee was appointed by this Court in the chapter 11 cases of Advanta and its debtor affiliates (the "*Chapter 11 Cases*").

9.      The Creditors' Committee represents the interests of the unsecured creditors in the Chapter 11 Cases.

### B.    Applicable Internal Revenue Code Provisions and the Tax Sharing Agreement

10.      The Internal Revenue Code (the "*IRC*") authorizes affiliated corporate groups to file consolidated income tax returns. Section 1501 of the IRC provides that "[a]n affiliated

3

group of corporations shall . . . have the privilege of making a consolidated return with respect to the income tax imposed by [the IRC] for the taxable year in lieu of separate returns." 26 U.S.C. § 1501.

11.     Consistent with Section 1501 of the IRC, the Secretary of the Treasury has promulgated regulations governing the filing of tax returns by consolidated tax groups that provide that "the common parent... for a consolidated return year is the sole agent (agent for the group) that is authorized to act in its own name with respect to all matters relating to the tax liability for that consolidated return year, for – (A) Each member in the group..." 26 C.F.R. § 1.1502-77(a).

12.     Advanta and its affiliated group of corporations, including ABC (the "*Affiliated Group*"), entered into a Tax Sharing Agreement, the applicable version of which (as amended) is dated as of May 1, 1995 (the "*TSA*"). The TSA applies to Advanta's filing of both federal and state tax returns on behalf of the Affiliated Group. A true and complete copy of the TSA is attached as *Exhibit G* hereto (and will be marked as JX1 at trial).

13.     Pursuant to the TSA, beginning in at least 1995 and each tax year up to and including 2009, ABC was included in the consolidated federal income tax return filed by Advanta on behalf of the Affiliated Group pursuant to IRC Section 1501.

C.     **The 2009 Tax Elections**

14.     Between at least 1995 and 2008, inclusive, Advanta filed tax returns for the Affiliated Group each year and any tax sharing payments arising under the TSA between members of the Affiliated Group were made or recorded on the respective books of the members of the Affiliated Group, as applicable, pursuant to the TSA.

15.     The Affiliated Group is a calendar year taxpayer and its federal income tax return for the 2009 tax year was due on or before March 15, 2010.

4

16.     Since 1995 and until Advanta's bankruptcy filing, Advanta annually sought and obtained a six-month extension to file the Affiliated Group's federal income tax return.

17.     In recent years, there has not been a consolidated net operating loss ("*NOL*") carryback attributable to ABC (including its subsidiary). ABC last had NOLs in the early 1990s.

18.     The Affiliated Group had consolidated NOLs totaling $8,123,872 and $628,081,799, respectively, in the 2008 and 2009 taxable years.

19.     No portion of the 2008 consolidated NOL is attributable to the combined operations of ABC and its subsidiary, Advanta Business Receivables Corp. ("*ABRC*").

20.     Approximately $570,000,000 (or 90%) of the 2009 consolidated NOL is attributable to the operations of ABC and its subsidiary.

21.     Section 172(b)(1)(A) of the IRC provides a default rule that an NOL generally is carried back to the two preceding tax years (the "*Two-Year NOL Carryback*"), with any remaining portion of the NOL carried forward to the twenty subsequent tax years. Section 172(b)(3) of the IRC allows a taxpayer to waive the Two-Year NOL Carryback, in which case the full NOL carries forward. In November 2009, Section 172(b)(1)(H) of the IRC was enacted, giving taxpayers the option to extend the carryback period for either a 2008 or 2009 NOL (but not both) from two preceding tax years to up to the five preceding tax years (the "*Five-Year NOL Carryback*").

22.     Beginning in November 2009, Advanta engaged in extensive analysis, including consultation with the Creditors' Committee, regarding the potential impact of various tax elections available for the 2009 tax year. ABC was not a participant in these discussions. ABC separately analyzed these issues during the same time frame.

5

23.     Advanta and ABC separately and preliminarily estimated that the application of the Five-Year NOL Carryback for the 2009 NOL would have resulted in a general unsecured claim against Advanta by ABC in the amount of approximately $170 million (prior to offsets) and application of the Two-Year NOL Carryback for the 2009 NOL would have resulted in a general unsecured claim against Advanta by ABC in the amount of approximately $70.6 million (prior to offsets).  These amounts are based upon the hypothetical payment that ABC would have been entitled to under the TSA if an election to carry back the 2009 NOL for five years or two years, respectively, were in effect.

24.     Advanta and ABC separately and preliminarily estimated that, if Advanta had made the Five-Year NOL Carryback election for 2009, the potential tax refund due to the Affiliated Group from the Internal Revenue Service ("*IRS*") would be approximately $54 million, and if the Two-Year NOL Carryback had applied to the 2009 NOL, the potential tax refund due to the Affiliated Group from the IRS would be approximately $27 million.

25.     In the days immediately prior to the March 15, 2010 filing deadline, ABC sought information from Advanta as to (i) whether Advanta would file a consolidated 2009 federal income tax return on or before the tax deadline or whether it would seek an extension to file the return and (ii) whether Advanta would elect the Five-Year NOL Carryback.  Advanta did not substantively respond to ABC's inquiries prior to filing the 2009 federal income tax return.

26.     ABC requested by letter dated Wednesday, March 10, 2010 that Advanta, as common parent of the Affiliated Group for the purposes of the consolidated return regulations, elect the Five-Year NOL Carryback treatment with respect to the Affiliated Group's 2009 NOL and that Advanta file the Affiliated Group's consolidated 2009 federal income tax return as soon as possible.

6

27.    On March 11, 2010, at 10:00 a.m., the Advanta Board of Directors convened a telephonic meeting. At that meeting, Advanta's Board of Directors discussed and evaluated a recommendation from management that Advanta, on behalf of the Affiliated Group, (i) elect not to carryback any NOL on the Affiliated Group's 2009 federal tax return and waiving any right to any 2009 NOL carryback and (ii) elect to amend the Affiliated Group's 2008 federal tax return to carry back NOL for fiscal year 2008 for five years.

28.    At the conclusion of the March 11, 2010 board meeting, Advanta's Board of Directors passed resolutions authorizing: (i) the filing on or before March 15, 2010, of the Affiliated Group's 2009 federal tax return; (ii) the waiver of any NOL on the Affiliated Group's 2009 federal tax return, assuming the Creditors' Committee confirmed that it had no objection to such action; and (iii) amending the Affiliated Group's 2008 federal tax return to elect to carryback the NOL from 2008 for five years, assuming that the Creditors' Committee confirmed it had no objection to such action.

29.    If called to testify at trial, Ken Goldman, then the Executive Vice President and Chief Financial Officer of ABC, would testify to certain events that occurred on March 11-12, 2010, as stated in his Declaration (attached as *Exhibit H* hereto). Mr. Goldman's Declaration shall be admitted into evidence without objection.

30.    On Friday, March 12, 2010, ABC filed an Emergency Motion for Entry of An Order Compelling Debtor Advanta Corp. to (I) Timely File a Request For An Extension of Time To File 2009 Consolidated Federal Income Tax Return; Or, In the Alternative (II) Elect To Carry Back 2009 Consolidated Net Operating Losses Five Years.

31.    On Sunday, March 14, 2010, having by then received confirmation that the Creditors' Committee supported the Tax Elections Advanta proposed to make, Advanta e-filed a

7

2009 consolidated federal income tax return for the Affiliated Group (the "*2009 Consolidated Return*"). In the 2009 Consolidated Return, Advanta did not elect the Five-Year NOL Carryback with respect to the Affiliated Group's 2009 NOL. Instead, Advanta elected to waive any NOL carryback with respect to the Affiliated Group's 2009 NOL, resulting in the carryforward of the full 2009 NOL (the "*2009 Tax Election*").

32.     The same day, Advanta filed an amended 2008 consolidated federal income tax return for the Affiliated Group (the "*Amended 2008 Consolidated Return*") electing the Five-Year NOL Carryback with respect to the Affiliated Group's 2008 NOL (the "*2008 Tax Election*", and together with the 2009 Tax Election, the "*Tax Elections*").

33.     At the time of the filing of the 2009 Consolidated Return and Amended 2008 Consolidated Return, Advanta had sole authority under applicable tax law to file tax returns on behalf of the Affiliated Group.

34.     As a result of the Tax Elections, Advanta has no entitlement to a $54 million tax refund that Advanta would have received had it elected to carryback the 2009 NOL five years. Instead, Advanta carried forward the 2009 NOL.

35.     Advanta did not seek or obtain this Court's approval for the filing of the 2009 Consolidated Return or for the filing of the Amended 2008 Consolidated Return or for the Tax Elections.

**D.     ABC is Closed and the FDIC is Appointed Receiver**

36.     At least as of the Petition Date, Advanta suspected that the FDIC might be appointed receiver of ABC, but Advanta did not know of the exact timing of such appointment, if any.

37.     On March 19, 2010, the Utah Department of Financial Institutions found that ABC was insolvent and closed ABC.

8

38.     The FDIC is a corporation organized and existing pursuant to the Federal Deposit Insurance Act, 12 U.S.C. § 1811, *et seq*., with its principal place of business located in Washington, D.C.

39.     The FDIC was appointed as receiver of ABC on March 19, 2010.

40.     In order to inform the IRS of its fiduciary status pursuant to 26 C.F.R. § 301.6402-7, a fiduciary must file a Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, with the applicable Internal Revenue Service Center. *See* 26 C.F.R. § 301.6402-7(d)(1) ("To satisfy the notice requirement of this paragraph (d)(1), the fiduciary must file Form 56-F, Notice Concerning Fiduciary Relationship of Financial Institution, with the Internal Revenue Service Center indicated on the form.").

41.     The FDIC-R filed a Form 56-F with regards to ABC on March 22, 2010.

42.     Aside from filing the March 22, 2010 Form 56-F and asking the IRS for copies of the Affiliated Group's tax returns, the FDIC and FDIC-R have had no communications with the IRS concerning: the Affiliated Group's tax returns; the FDIC seeking to amend the Affiliated Group's tax return; the IRS's willingness to allow the FDIC-R to amend or alter the Tax Elections made by Advanta in the tax returns Advanta filed on behalf of the Affiliated Group on March 14, 2010; the applicability of a September 15, 2010 extension deadline when a timely tax return is already on file with the IRS; or the applicability of any tax deadline to a fiduciary seeking to act pursuant to 26 C.F.R. § 301.6402-7.

43.     The documents containing the following production numbers are business records of ABC:

> Advanta 0005895 – 0005908
> FDIC 0047678 – 0047680
> FDIC 0048000 – 0048002
> FDIC 0053440 – 0053441

9

FDIC 0058427
FDIC 0058428 – 0058429
FDIC 0047673 – 0047677
FDIC 0033732
FDIC 0001972 – 0001974
FDIC 0034180 – 0034246
FDIC 0034682 – 0034686
FDIC 0046025 – 0046031
FDIC 0034488 – 0034492
FDIC 0034250 – 0034273
FDIC 0046192 – 0046252
FDIC 0047703 – 0047711

ABC Board Minutes:

FDIC 0054846 – 0054854
FDIC 0002373 – 0002375
FDIC 0002501 – 0002502
FDIC 0002503 – 0002505
FDIC 0002360 – 0002363
FDIC 0002373 - 0002375
FDIC 0002403 – 0002407
FDIC 0002439 – 0002443
FDIC 0002465 – 0002470
FDIC 0002427 - 0002429

## IV.

## STATEMENT OF FACTS AND MIXED
## QUESTIONS OF LAW AND FACT IN DISPUTE

1.     The parties dispute whether the TSA imposes obligations on Advanta with respect

to tax elections that are not favorable to a subsidiary for a given tax year.  Advanta and the

Creditors' Committee contend that the TSA permits Advanta to make tax elections under the

TSA and compensating a subsidiary is not required if different tax elections would be more

favorable to the subsidiary for a given tax year.  The FDIC-R contends that the TSA requires

Advanta to compensate ABC if Advanta makes tax elections that disadvantage ABC.

2.     The parties dispute whether Generally Accepted Accounting Principles

("*GAAP*") and/or the TSA mandate that Advanta's tax elections control the determination of

ABC's Separate Member Refund under the TSA. Advanta and the Creditors' Committee contend that Advanta's elections control. The FDIC-R contends that the TSA requires that Advanta make ABC whole with respect to any tax attributes it generated even if Advanta makes no election with respect to such tax attributes or if Advanta makes a tax election that leaves ABC in a worse tax position than ABC would have been in if ABC had controlled its own tax elections and made a different election.

3.    The parties dispute whether the TSA (or the covenant of good faith and fair dealing implied therein) obligates Advanta to consult with any member of the Affiliated Group prior to making determinations with respect to consolidated federal income tax return elections. Advanta contends that there is no such requirement. The FDIC-R disagrees.

4.    The parties dispute whether Advanta's estate and its creditors will be harmed if the FDIC-R is allowed to file competing consolidated returns with the IRS. The FDIC-R contends that Advanta's estate and its creditors will not be harmed because ABC would have a general unsecured claim against Advanta in the approximate amount of $170 million even if the Tax Elections are unchanged. Advanta and the Creditors' Committee contend that the estate and Advanta's creditors will be harmed because ABC (FDIC-R) would potentially have a general unsecured claim in the amount of approximately $170 million against Advanta only if (i) the Court allows the FDIC-R to file a competing consolidated return for the 2009 year electing the Five-Year NOL Carryback for such year and a competing consolidated return for the 2008 year revoking the Five-Year NOL Carryback for such year and (ii) the IRS in its discretion accepts such a return.

5.    The parties dispute whether Advanta used sound business judgment in electing to make the Tax Elections. Advanta and the Creditors' Committee contend that the Tax Elections

11

constitute an exercise of sound business judgment of the Board of Directors of Advanta because, among other things, following consultation with its advisors, the Board of Directors reasonably believed that the Tax Elections would likely (i) mitigate Advanta's exposure to an assertion by ABC of a general unsecured claim of up to approximately $170 million and (ii) preserve Advanta's worthless stock loss deduction for its interests in ABC so that Advanta could use the resulting loss to offset any gains or income that might be triggered during, pursuant to, or after Advanta's chapter 11 plan. Advanta and the Creditors' Committee further contend that a parent corporation does not owe fiduciary duties to a subsidiary and that tax elections are Advanta's alone to make under the TSA. The FDIC-R contends that Advanta did not exercise sound business judgment because the Tax Elections harmed its wholly-owned subsidiary, ABC, and also violated the TSA and Advanta's fiduciary duties to ABC, thus giving rise to the same $170 million general unsecured claim that Advanta sought to avoid. The FDIC-R further contends that any potential future benefits of the 2009 NOL to Advanta are purely speculative.

6.     The parties dispute whether Advanta's potential future use for a worthless stock loss deduction is a valuable asset of Advanta's estate. Advanta and the Creditors' Committee contend that it is. The FDIC-R contends that any potential future use of a worthless stock is speculative and of insignificant value.

7.     The parties dispute whether the Tax Elections were made outside the ordinary course of business. The FDIC-R contends that the Tax Elections were made outside the ordinary course of business because (i) in making the Tax Elections, Advanta at a minimum breached the TSA (including the duty of good faith and fair dealing implied therein); (ii) prior to 2009, Advanta had always sought a six-month extension to file its tax returns; (iii) Advanta had never previously waived a tax refund to which the Affiliated Group was otherwise entitled;

12

(iv) Advanta had never previously made tax elections that were disadvantageous to another member of the Affiliated Group; (v) Advanta's management and Board of Directors thought it necessary to engage in (and did engage in) lengthy consultation with Advanta's advisors as well as with the Creditors' Committee over what tax elections to make; and (vi) Advanta's management and Board of Directors thought it necessary to (and did) pass a board resolution authorizing the Tax Elections. Advanta and the Creditors' Committee contend that the filing of tax returns and making tax elections and waivers are in the ordinary course of business and that ABC so believed at the time of the Tax Elections and, indeed, urged Advanta to file the 2009 Consolidated Return quickly without suggesting any need for prior Court approval. Advanta and the Creditors' Committee further contend that the importance of a decision and the amount of time and resources devoted to it have nothing to do with whether it is an ordinary course decision, and that consultation with the creditors' committee in ordinary course transactions of magnitude is customary in bankruptcy cases.

8.    The parties dispute whether the fact that Advanta did not seek an extension to file the 2009 Consolidated Return is evidence that the Tax Elections were made outside the ordinary course of business. Advanta contends that, even if its prepetition practice was to request an extension, circumstances relating to the chapter 11 cases allowed Advanta to timely file the 2009 Consolidated Return, there was no business reason to delay such a filing, and ABC itself desired that Advanta promptly file its tax return for the 2009 tax year. The FDIC-R contends that Advanta's unprecedented failure to request an extension is prima facie evidence that the Tax Elections were not ordinary course transactions.

9.    The parties dispute whether the IRS is likely to honor any competing returns filed by the FDIC-R (the "*FDIC-R Returns*") if they are filed. Advanta and the Creditors'

13

Committee contend (i) that any FDIC-R Return that the FDIC-R may file would be late (even if filed between now and September 15, 2010), and (ii) that even if any FDIC-R Return that the FDIC-R files is considered timely, it is within the IRS's sole discretion whether to honor such return, and thus it is purely speculative whether any FDIC-R Return would be honored by the IRS. The FDIC-R contends that Section 6402(k) of the IRC and applicable Treasury regulations permit the FDIC-R to file the FDIC-R Returns on or before September 15, 2010, and claim and receive tax refunds with respect to NOLs attributable to ABC. The FDIC-R further contends that, if the Court voids Advanta's Tax Elections as requested by the FDIC-R, the likelihood that the IRS will honor the FDIC-R Returns increases.

## V.

## LEGAL ISSUES PRESENTED[2]

### A.     Injunction Motion

1.     In the Injunction Motion, the FDIC-R contends that Advanta's Tax Elections are void *ab initio* because they were not made in the ordinary course of business and Advanta did not seek pre-approval from the Court to make the Tax Elections pursuant to section 363(b) of the Bankruptcy Code. Advanta and the Creditors' Committee contend that the Tax Elections were made in the ordinary course of business just like the filing of every tax return.

2.     The parties disagree over who bears the burden of proof on the issues discussed below. The FDIC-R contends that Advanta and the Creditors' Committee bear the burden of demonstrating that the Tax Elections were ordinary course transactions. Advanta and the Creditors' Committee contend that the FDIC-R bears the burden of demonstrating that the Tax

---

[2] The parties incorporate by reference their extensive briefing on the Motions. During the telephonic conference on June 9, 2010, the Court clarified that, in this Joint Pre-Evidentiary Hearing Memorandum, the parties should "not brief but identify the issues to be decided." Accordingly, the following only identifies the legal issues to be decided.

14

Elections were not made in the ordinary course, and as to each of the FDIC's various contentions and claims.

3.      The Injunction Motion and the parties' briefing concerning the Injunction Motion raise the following legal issues:

4.      Issue No. 1: Did Advanta make the Tax Elections in the ordinary course of business? Advanta and the Creditors' Committee contend that the Tax Elections were made in the ordinary course of business. The FDIC-R disagrees.

5.      Sub-Issue No. 1(a): Is the making (or waiving) of a tax election by a parent of a consolidated tax group on behalf of the individual members of the group an ordinary course transaction, even if it is a significant decision subjected to board approval and creditor committee support and substantial resources are devoted to the decision-making process?

6.      Sub-Issue No. 1(b): Would a hypothetical creditor of Advanta reasonably expect Advanta to make the Tax Elections? Advanta and the Creditors' Committee contend that a hypothetical creditor would have expected Advanta to make tax elections that benefited creditors as a whole, not one contingent creditor, and Advanta did so by mitigating Advanta's exposure to the assertion by ABC of a general unsecured claim of up to approximately $170 million. The FDIC-R contends that the Tax Elections did not mitigate Advanta's exposure to that claim because, in making the Tax Elections, Advanta at a minimum breached the TSA, the duty of good faith and fair dealing implied therein, and Advanta's fiduciary duties to ABC.

7.      Sub-Issue No. 1(b)(i): Did Advanta breach the TSA by making the Tax Elections? The FDIC-R contends that the Tax Elections breached the TSA because the TSA requires that Advanta make ABC whole if Advanta makes a tax election that leaves ABC in a worse tax position than ABC would have been in had it filed a separate tax return and made different

15

elections. Advanta and the Creditors' Committee contend that there is no such requirement, and accordingly, that the Tax Elections did not breach the TSA.

8. Sub-Issue No. 1(b)(ii): By making the Tax Elections did Advanta breach the duty of good faith and fair dealing? The FDIC-R contends that it did because Advanta frustrated the TSA's purpose by preventing the occurrence of a condition precedent to Advanta's payment obligations to ABC. Advanta and the Creditors' Committee contend that the FDIC-R misinterprets the TSA's purpose, that the implied covenant of good faith and fair dealing does not create any new contractual obligations, and that Advanta did not breach the covenant of good faith and fair dealing, in any event.

9. Sub-Issue No. 1(b)(iii): Did Advanta violate any fiduciary duties to ABC by making the Tax Elections? Advanta and the Creditors' Committee contend that Advanta did not because Advanta exercised rights given to it by law and the TSA and that Advanta does not owe fiduciary duties to ABC. The FDIC-R contends that Advanta has fiduciary duties to its subsidiary, ABC, and violated those fiduciary duties by making tax elections that were unfair to ABC.

10. Issue No. 2: Is the relief that the FDIC-R seeks in the Injunction Motion barred by the doctrine of laches? The Creditors' Committee bears the burden of demonstrating that laches applies. The Creditors' Committee contends that the Injunction Motion is barred because ABC unreasonably delayed in filing the Injunction Motion. The FDIC-R contends that the relief it seeks is not barred by laches because ABC did not unreasonably delay in filing the Injunction Motion and neither Advanta nor the Creditors' Committee were prejudiced by any delay.

11. Issue No. 3: Even if the Tax Elections were made outside the ordinary course of business, should they be approved retroactively as being a valid exercise of Advanta's business

16

judgment? Advanta and the Creditors' Committee contend the Tax Elections were made in the exercise of the sound business judgment of Advanta's Board of Directors and such decision is entitled to the presumptions of the business judgment rule. The FDIC-R contends that the Tax Elections were not a valid exercise of business judgment and that, even if the business judgment rule applies, the Tax Elections cannot and should not be ratified.

## B. Lift Stay Motion

1.    In the Lift Stay Motion, the FDIC-R seeks an Order pursuant to 11 U.S.C. § 362(d)(1) holding that the automatic stay is lifted so that the FDIC-R, as fiduciary of ABC, may file the FDIC-R Returns for the Affiliated Group pursuant to 26 U.S.C. § 6402(k) and 26 C.F.R. § 301.6402-7 reversing the Tax Elections. The burden is on the FDIC-R to demonstrate that, to the extent that the bankruptcy stay applies, cause exists to lift the stay. The Lift Stay Motion and the parties' pleadings in response to the Lift Stay Motion raise the following legal issues:

2.    Issue No. 1: Should the automatic stay be lifted to allow FDIC-R to file the FDIC-R Returns? The FDIC-R contends that, to the extent that the automatic stay applies, it should be lifted. Advanta and the Creditors' Committee contend that the automatic stay does apply and should not be lifted.

3.    Issue No. 1(a): Will Advanta and its estate be prejudiced if the automatic stay is lifted for the FDIC-R to file competing consolidated returns? Advanta and the Creditors' Committee contend that it will because such filings may result in an additional claim of up to approximately $170 million by ABC/FDIC-R against Advanta's estate, thereby diluting creditor recoveries. The FDIC-R contends that the FDIC-R Returns will not prejudice Advanta's estate but rather would benefit the estate by bringing into it the estimated $54 million refund to offset

17

the $170 million that is allegedly owed to ABC/the FDIC-R as a result of Advanta's breach of the TSA and its fiduciary duties to ABC.

4.  Issue No. 1(b): Will the harm to the FDIC-R from maintenance of the automatic stay considerably outweigh the hardship to Advanta? Advanta and the Creditors' Committee contend no. The FDIC-R contends that it will face substantial hardship if the stay is not lifted because the estimated $54 million consolidated tax refund from carrying back the 2009 NOL five years will be lost.

5.  Issue No. 1(c): Is the FDIC-R likely to succeed in getting the IRS to accept the FDIC-R Returns? Advanta and the Creditors' Committee contend (i) that any FDIC-R Return that the FDIC-R may file would be late (even if filed between now and September 15, 2010), and (ii) that even if any FDIC-R Return that the FDIC-R files is considered timely, it is within the IRS's sole discretion whether to honor such return, and thus it is purely a matter of speculation whether any FDIC-R Returns would be honored by the IRS. The FDIC-R contends that it is likely that the IRS will accept the FDIC-R Returns because IRC Section 6402(k) and Treas. Reg. § 301.6402-7 specifically permit the FDIC-R to file the FDIC-R Returns on or before September 15, 2010, and claim and receive refunds of federal income taxes with respect to the NOLs attributable to ABC.

6.  Issue No. 1(c)(i): Is there a deadline by which the FDIC-R is permitted to file the FDIC-R Returns and has that deadline passed? The FDIC-R contends that, pursuant to 26 U.S.C. § 172(b)(1)(H)(iii) and 26 C.F.R. § 301.9100-2(b), the deadline for filing the FDIC-R Returns and making a Five-Year NOL Carryback election is September 15, 2010. Advanta and the Creditors' Committee contend that Tax Elections are irrevocable, that the FDIC-R has no statutory authority to file the FDIC-R Returns because the FDIC was appointed as receiver

18

subsequent to the end of the applicable tax year and after the 2009 Consolidated Return was filed, and, whether or not the Tax Elections are irrevocable, there is no deadline by which the FDIC-R Returns must be filed.

C.    **IRS as a Required Party**

1.    <u>Issue No. 6</u>: Is the IRS a required party to this Adversary Proceeding? The FDIC-R disputes that the IRS is a required party. Advanta and the Creditors' Committee contend that it is. Advanta and the Creditors' Committee bear the burden of demonstrating that the IRS is a required party.

**VI.**

**WITNESSES**

A.    <u>**FDIC-R Witnesses**</u>

The FDIC-R expects to offer the testimony of the following witnesses at the Evidentiary Hearing:

1.    <u>Kenneth Goldman</u> (by declaration). The Declaration of Mr. Goldman, the former Executive Vice President and Chief Financial Officer at ABC, which is attached hereto as Exhibit B, will be offered in lieu of Mr. Goldman's live testimony without objection.

2.    <u>Donald Albert</u> (by video). Mr. Albert, Advanta's Director of Taxation, is expected to testify concerning his understanding of the TSA, the creation of the TSA, the course of dealing under the TSA, the calculation of Advanta's actual or potential tax sharing obligations under the TSA, the decision by Advanta not to seek an extension of time in which to file the 2009 consolidated federal income tax return, the decision by Advanta not to share information with ABC concerning when that tax return would be filed and what tax elections would be made in the 2009 consolidated federal income tax return, and the speculative nature of any potential

19

future value to Advanta of the 2009 NOL carryforward and the worthless stock loss with respect to Advanta's stock interest in ABC.

   3.     William Rosoff (by video). Mr. Rosoff, Advanta's Vice Chairman of the Board and President and former Vice Chairman of ABC, is expected to testify concerning his understanding of the TSA, the decision by Advanta not to seek an extension of time in which to file the 2009 consolidated federal income tax return, the decision by Advanta not to share information with ABC concerning when that tax return would be filed or what tax elections would be made in the 2009 consolidated federal income tax return, the decision by Advanta to make the Tax Elections, the decision by Advanta not to seek Court approval before making the Tax Elections, the speculative nature of any potential future value to Advanta of the 2009 NOL carryforward and the worthless stock loss with respect to Advanta's stock interest in ABC, and his understanding as to whether he had any conflict of interest in serving in dual roles at Advanta and ABC.

   4.     Philip Browne (by video): Mr. Browne, Advanta's Senior Vice President and Chief Financial Officer, is expected to testify concerning his understanding of the TSA, the decision by Advanta not to seek an extension of time in which to file the 2009 consolidated federal income tax return, the decision by Advanta not to share information with ABC concerning when that tax return would be filed or what tax elections would be made, the decision by Advanta to make the Tax Elections, the decision by Advanta not to seek Court approval before making the Tax Elections, the speculative nature of any potential future value to Advanta of the 2009 NOL carryforward and the worthless stock loss with respect to Advanta's stock interest in ABC, and his understanding as to whether he had any conflict of interest in serving in dual roles at Advanta and ABC.

20

5.     Michael I. Braverman (live).  Michael I. Braverman of Duff & Phelps LLC is expected to testify as an expert witness on GAAP issues in connection with the TSA and the speculative nature of any potential future benefit to Advanta of the 2009 NOL as set forth in his Expert Report.  Mr. Braverman may also offer rebuttal testimony in response to testimony offered by Advanta or the Creditors' Committee.

6.     The FDIC-R reserves the right to call other witnesses for rebuttal or impeachment purposes, either live and/or through deposition.  The FDIC-R further reserve their right to call any person listed in witness lists of any other party.

**B.     Advanta's and the Creditors' Committee's Witnesses**

Advanta and the Creditors' Committee expect to offer the testimony of the following witnesses at the Evidentiary Hearing:

1.     Professor Merle Erickson (live).  Prof. Erickson, Professor of Accounting at the Booth School of Business at The University of Chicago, is expected to testify as both a fact and expert witness.  In his capacity as a fact witness, Prof. Erickson is expected to testify to the GAAP advice he gave at the March 10, 2010, joint meeting of Advanta and the Creditors' Committee.  In his capacity as an expert witness, Prof. Erickson is expected to testify on GAAP issues in connection with the TSA as set forth in his Expert Report.  Prof. Erickson may also offer rebuttal testimony in response to testimony offered by ABC.

2.     Philip Browne (live).  Mr. Browne, Advanta's Senior Vice President and Chief Financial Officer, is expected to testify concerning his understanding of the TSA, the GAAP references in the TSA, tax sharing payments under the TSA, Advanta's evaluation of its options regarding the 2009 consolidated federal tax return, the timing and substance of the 2009 consolidated federal income tax return and the amended 2008 consolidated federal income tax return, the potential impact on Advanta's estate of making various elections on the 2009

21

consolidated federal income tax return, the potential value of the Net Operating Loss carryforward and the worthless stock loss with respect to Advanta's stock interest in ABC, and the FDIC's interactions with Advanta generally and with respect to the FDIC's oversight and receivership of ABC more specifically. Mr. Browne may also testify in response to testimony offered by the FDIC.

3. Clayton M. Sunderland (by videotape). Mr. Sunderland, the FDIC's Rule 30(b)(6) deposition witness and Senior Examiner at the FDIC, is expected to testify regarding the FDIC's examinations of ABC, and the FDIC's Jan. 11, 2010 Report of Examination of ABC and the conclusions therein, the FDIC's related communications with in-house and outside accounting advisors and with ABC, and the FDIC's views on the Dec. 31, 2009 Call Report and Amended Call Report filed by ABC, the TSA and other tax-sharing agreements, and tax elections and the potential impact on Advanta's estate and ABC of making various elections on the 2009 consolidated federal income tax return.

4. William Rosoff (live): Mr. Rosoff, Advanta's Vice Chairman of the Board and President, is expected to testify concerning Advanta's prepetition business, his understanding of the TSA, Advanta's evaluation of its options regarding the 2009 consolidated federal tax return, the decision-making process regarding the timing and substance of the 2009 consolidated federal income tax return, the potential impact on Advanta's estate of making various elections on the 2009 consolidated federal income tax return and the amended 2008 consolidated federal income tax return, the potential value of the Net Operating Loss carryforward and the worthless stock loss with respect to Advanta's stock interest in ABC, and the FDIC's interactions with Advanta generally and with respect to the FDIC's oversight and receivership of ABC. Mr. Rosoff may also testify in response to testimony offered by the plaintiff.

22

5.      Norman N. Strauss (live).  Mr. Strauss, the Ernst & Young Executive Professor in Residence at Baruch College's Zicklin School of Business and retired partner at Ernst & Young LLP, is expected to testify as an expert witness to his opinions on GAAP as referenced in the TSA as set forth in his Expert Report.  Mr. Strauss may also offer rebuttal testimony in response to testimony offered by Plaintiff.

6.      Michael Stern (live).  Mr. Stern, Chairman of the Creditors' Committee, is expected to testify regarding the Creditor's Committee evaluation of, and participation in the decision-making process related to, the elections made on the 2009 consolidated federal income tax return and the amended 2008 consolidated federal income tax return, the potential impact on Advanta's estate of making various elections on the 2009 consolidated federal income tax return and the amended 2008 consolidated federal income tax return, and potential harm to Advanta's estate and its creditors if the FDIC is allowed to file competing consolidated returns with the IRS.  Mr. Stern may also testify in response to testimony offered by the FDIC.

7.      Advanta and the Creditors' Committee reserve their right to call other witnesses for rebuttal or impeachment purposes, either live and/or through deposition, including but not limited to Don Albert.  Advanta and the Creditors' Committee further reserve their right to call any person listed in witness lists of any other party.

## VII.

## EXHIBIT LISTS

See Exhibits A, B, C, and D attached hereto.

## VIII.

## DISCOVERY ITEMS TO BE INTRODUCED

See Exhibits E and F attached hereto.

23

# IX.

## LENGTH OF TRIAL

The parties estimate the evidentiary hearing to last three days: August 16-18, 2010.

Dated: August 13, 2010
      Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Paul N. Heath (No. 3704)
Marcos A. Ramos (No. 4450)
Chun I. Jang (No. 4790)
Zachary I. Shapiro (No. 5103)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701


- and -


Marcia L. Goldstein (admitted *pro hac vice*)
Richard L. Levine (admitted *pro hac vice*)
Christopher J. Cox (admitted *pro hac vice*)
Robert J. Lemons (admitted *pro hac vice*)
Marcie Kaufman (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION


/s/ Howard A. Cohen
_____
Howard A. Cohen (DE 4082)
DRINKER BIDDLE & REATH LLP
1100 N. Market Street, Suite 1000

/s/ Adam Hiller
_____
Adam Hiller (DE No. 4105)
Donna Harris (DE No. 3740)
PINCKNEY, HARRIS & WEIDINGER, LLC
20 North Market Street, Suite 950
Wilmington, Delaware 19801
Telephone: (302) 504-1497
Facsimile: (302) 442-7046


-and-


Geoffrey T. Raicht (admitted *pro hac vice*)
Andrew B. Kratenstein (admitted *pro hac vice*)
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
Telephone: (212) 547-5400
Facsimile: (212) 547-5444


-and-


Kathryn R. Norcross (of counsel)
Senior Counsel
Dennis J. Early (of counsel)
Counsel-Legal Division
Federal Deposit Insurance Corporation
Legal Division
3501 Fairfax Drive, VS-D-
Arlington, VA 22226
Telephone: (703) 562-2783
Email: knorcross@fdic.gov
Email: dearly@fdic.gov

ATTORNEYS FOR THE FEDERAL DEPOSIT
INSURANCE CORPORATION, IN ITS

24

Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: 302 467-4201

CAPACITY AS RECEIVER

CO-COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

- and -

Mitchell A. Seider (admitted *pro hac vice*)
Roger G. Schwartz (admitted *pro hac vice*)
Robert J. Malionek (admitted *pro hac vice*)
Jason M. Casey (admitted *pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, New York 10003
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

COUNSEL TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

25